1  Latesha Howard
   11382 Low Chaparral Drive
2  Victorville, Ca. 92392
   (310658-9037)
3  Email: LATHOW2@YAHOO.COM

4
   Latesha Howard, IN PRO PER
5

6

7

8           **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10

11 Latesha Howard                    Case No.:  EDCV25-01753-DMG(RAO)

12              Petitioner,

13      vs.                          **PETITION FOR WRIT OF HABEAS**
                                     **CORPUS PURSUANT TO 28 U.S.C. § 2254**
14
   SAN BERNARDINO COUNTY CHILDREN
15 AND FAMILY SERVICES, JUDGE STEVEN A.
   MAPES, COUNTY COUNSEL, MARINA
16 WHITE.
                Respondents.         **DATE:**
17                                   **TIME:**
                                     **DEPT:**
18

19 _____

20

21 DATED: July 10, 2025

22

23

24

25

26

27

28
                                  - 1 -
   ─────────────────────────────────────────────────
   PETITION FOR WRIT OF HABEAS CORPUS SAN BERNARDINO COUNTY CFS, ) PURSUANT TO 28 U.S.C. §
   2254

FILED
CLERK, U.S. DISTRICT COURT

JUL 11 2025

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

## I. INTRODUCTION

Petitioner Latesha Howard, a fit and protective mother, respectfully petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the ongoing and unlawful deprivation of custody and parental rights by the San Bernardino County Juvenile Dependency Court, presided over by Judge Steven A. Mapes, in concert with San Bernardino County Children and Family Services (CFS), County Counsel, and the minor children's court-appointed attorneys. This petition is brought on behalf of her minor children: A.L.H, P.H, M.H, and A.H.

Petitioner contends that her fundamental rights under the U.S. Constitution have been repeatedly and egregiously violated, resulting in unlawful state custody of her children in violation of due process, equal protection, the Americans with Disabilities Act (ADA), and other federal and state protections. No meaningful state remedy exists, as all good faith attempts to present evidence, secure legal representation, and invoke protections under the law have been deliberately obstructed. Immediate federal intervention is required to prevent further harm to Petitioner and her children.

## II. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 2241 and 2254. Venue is proper in this district because the unlawful custody and all proceedings occurred in San Bernardino County, California.

## III. CUSTODY STATUS AND PARTIES

Petitioner is the mother of four minor children who are currently under the physical custody of San Bernardino County CFS pursuant to court orders entered by Judge Steven A. Mapes. Petitioner has continuously contested the removal of her children and has not been provided a constitutionally adequate opportunity to be heard or to present critical exculpatory evidence. The respondents are public entities and officers acting under color of state law.

## IV. STATEMENT OF FACTS

PETITION FOR WRIT OF HABEAS CORPUS SAN BERNARDINO COUNTY CFS, ) PURSUANT TO 28 U.S.C. § 2254

1. On April 26, 2023, CFS removed Petitioner's children based on a claim of a head injury to her son. That same evening, Aaron was taken to the hospital where a CT scan confirmed there was no injury (WIC § 300; U.S. CONST. amend. XIV). Medical records and a childhood photo confirmed the bump on Aaron's head was congenital. These were suppressed by CFS and Petitioner's attorney (42 U.S.C. § 1983; In re M.F., 32 Cal.App.5th 1 (2019)).

2. Although the hospital visit was documented in the jurisdiction/disposition report, the exculpatory information was never presented to the court by any party. This omission constitutes willful suppression of material facts and violated Petitioner's due process rights (Mooney v. Holohan, 294 U.S. 103 (1935); Peralta v. Heights Med. Ctr., 485 U.S. 80 (1988)).

3. The original warrant authorizing removal was based on the false and fraudulent allegations made by Social Service Practitioner Gerald Stone. These claims were rebutted by medical documentation and photo evidence submitted to Tiyana Benitez in May 2023 and included in her jurisdiction/disposition report. This renders the warrant void ab initio (U.S. CONST. amend. XIV; 42 U.S.C. § 1983).

4. Petitioner completed over 20 parenting and special needs education courses prior to CFS involvement. These were included in CFS reports but deliberately ignored (42 U.S.C. § 1983; ADA Title II). Despite this, CFS submitted knowingly false statements to prolong litigation and delay reunification (WIC § 366.21; Troxel v. Granville, 530 U.S. 57 (2000)). Petitioner also completed 2 case plans in good faith. Each time the case plans were completed CFS submitted false information to the court to delay the case instead of returning Petitioner's children.

PETITION FOR WRIT OF HABEAS CORPUS SAN BERNARDINO COUNTY CFS, ) PURSUANT TO 28 U.S.C. § 2254

5. While in CFS custody, Petitioner's children suffered physical harm, trauma, regression, and unsafe living conditions including sleeping in CFS offices and being placed with unqualified caretakers. Aaron experienced an overdose of narcotic medication not prescribed to him (42 U.S.C. § 1983; WIC § 366.22).

6. Petitioner's children are not receiving necessary ADA accommodations while in state custody. The trauma of separation has caused severe behavioral regression, leading to multiple school suspensions—none of which occurred while in Petitioner's care (42 U.S.C. § 12132; 29 U.S.C. § 794).

7. Aaron disclosed to social worker Tiyana Benitez that he was coerced into making false abuse claims in exchange for food, which he never received. This disclosure is noted in Tiyana's July 2023 JD Report, yet no party presented it to the court or took corrective action (42 U.S.C. § 1983; CCP § 657; Mullane v. Central Hanover Bank, 339 U.S. 306 (1950)).

8. Petitioner and her children were denied disability accommodations throughout the proceedings. Interviews were conducted without supports, violating the ADA and Section 504 of the Rehabilitation Act (42 U.S.C. § 12132; 29 U.S.C. § 794).

9. Petitioner has repeatedly requested that her ineffective court-appointed attorney be removed. He withheld exculpatory evidence, failed to object to known false allegations, and refused to advocate effectively. Despite multiple motions and documented misconduct, Judge Mapes denied all removal requests (42 U.S.C. § 1983; Pulliam v. Allen, 466 U.S. 522 (1984)).

10. Judge Mapes has refused to recuse himself despite compelling evidence of judicial bias and procedural misconduct. Petitioner has never received a fair trial or evidentiary hearing (U.S. CONST. amend. XIV; Gonzalez v. Crosby, 545 U.S. 524 (2005)).

11. The April 21, 2025, court order was modified after the hearing based on an ex parte request by the children's attorney to require her approval for placement changes. This was not

- 4 -

disclosed at the hearing and constitutes improper ex parte communication (Judicial Code of Ethics; U.S. CONST. amend. XIV).

12. Petitioner has been explicitly told that unless she admits to abuse allegations, reunification will not be granted. This coercion violates her right to due process and the presumption of innocence. CFS is attempting to force Petitioner to confess to known falsehoods as a condition for the return of her children (U.S. CONST. amend. V, XIV; 42 U.S.C. § 1983; Garrity v. New Jersey, 385 U.S. 493 (1967)).

13. No party named herein may claim immunity for actions taken in bad faith, in violation of clearly established law, or in the knowing submission of fraudulent evidence. Judicial immunity does not apply to administrative, investigatory, or malicious acts (Mireles v. Waco, 502 U.S. 9 (1991); Pulliam v. Allen, 466 U.S. 522 (1984); Kalina v. Fletcher, 522 U.S. 118 (1997)).

# V. CLAIMS FOR RELIEF

A. Denial of Procedural Due Process – U.S. CONST. amend. XIV B. Denial of Substantive Due Process – U.S. CONST. amend. XIV C. Violation of Family Integrity Rights – Troxel v. Granville, 530 U.S. 57 (2000) D. Fabrication of Evidence and Fraud Upon the Court – In re M.F.; Mooney v. Holohan E. Americans with Disabilities Act Violations – 42 U.S.C. § 12132 F. Violation of 42 U.S.C. § 1983 – Deprivation of Federal Rights Under Color of State Law G. Coerced Confession and Denial of Presumption of Innocence – U.S. CONST. amend. V, XIV

VI. EXHAUSTION AND FUTILITY

Petitioner has made multiple good faith attempts to exhaust state remedies. However, all motions to present evidence have been denied or stricken by the presiding judge. Attorneys have failed to act in her interest. Judicial bias and obstruction of process have rendered state remedies futile and

PETITION FOR WRIT OF HABEAS CORPUS SAN BERNARDINO COUNTY CFS, ) PURSUANT TO 28 U.S.C. § 2254

ineffective. Immediate federal intervention is required to protect Petitioner's constitutional rights and the safety and welfare of her children.

## VII. PRAYER FOR RELIEF

Petitioner respectfully requests:

1. Immediate issuance of a writ of habeas corpus under 28 U.S.C. § 2254 to secure the release of her children from unlawful state custody;
2. An evidentiary hearing on all constitutional and factual claims raised herein;
3. Investigation and injunctive relief against Judge Mapes, CFS, County Counsel, and all other parties named herein for abuse of authority and systemic due process violations;
4. Referral to the U.S. Department of Justice and the California Attorney General for criminal and civil investigation;
5. Any other relief the Court deems just and proper.

Respectfully submitted,

DATED: July 11, 2025

Latesha Howard
Petitioner in Pro Per
11382 Low Chaparral Drive
Victorville, Ca. 92392
(310) 658-9037
LATHOW2@YAHOO.COM

# PROOF OF SERVICE

I, Dexter Babbs, am over the age of 18 and not a party to the above-captioned case. On July 11, 2025, I served the following documents:

- Petition for Habeas Corpus (28 U.S.C. § 2254)
- Affidavit
- 04/26/2023 Detention Report
-05/22/2023 Jurisdiction/Disposition Report
-07/17/2023 Jurisdiction/Disposition Report

I served the documents by placing true and correct copies in sealed envelopes with first-class postage fully prepaid and deposited them in the United States Postal Service, addressed to the following parties:

Office of the County Counsel
San Bernardino County
385 North Arrowhead Avenue, 4th Floor
San Bernardino, CA 92415

Clerk of the Court (for service upon Judge Steven A. Mapes)
San Bernardino Juvenile Dependency Court
900 E. Gilbert Streeet
San Bernardino, CA 92415

Children's Advocacy Law Firm
Marina White
6301 Day Street Ste. 100
Riverside, Ca. 92507-0902

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 11, 2025, in Victorville, California.

Dexter Babbs

PETITION FOR WRIT OF HABEAS CORPUS SAN BERNARDINO COUNTY CFS, ) PURSUANT TO 28 U.S.C. § 2254

**Case Name:** Latesha Howard,
*v.*
San Bernardino County Children and Family Services, Judge Steven A. Mapes,
San Bernardino County Counsel, Marina White

**Case Number:**
**Plaintiff:** Latesha Howard,
**Defendants:** San Bernardino County Children and Family Services, Judge Steven Alan Mapes,
San Bernardino County Counsel, and Marina White (Children's Advocacy Attorney)

# EXHIBIT LIST

## Exhibit 1 – Affidavit

### Description:

- Latesha Howard's affidavit of truth

## Exhibit 2- Detention Report

### Description:

- 04/26/2023

## Exhibit 3- Jurisdictional/Disposition Reports

### Description:

- 05/22/2023 Jurisdictional/Disposition Report
- 07/17/2023 Jurisdictional/Disposition Report

# Exhibit 1

# AFFIDAVIT OF TRUTH

**State of California**
**County of San Bernardino**

I, **Latesha Howard**, a competent adult over the age of 18, declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, based on personal experience, documented evidence, and sworn communications. I make this declaration for the purposes of federal litigation, administrative review, and to notify public authorities, including the U.S. Department of Justice and international human rights agencies, of ongoing systemic civil rights violations.

## I. IDENTITY & BACKGROUND

1. I am the biological and legal mother of four minor children—three adopted children with special needs and one biological child—currently entangled in dependency proceedings overseen by San Bernardino County Children and Family Services (CFS).

2. I have complied in full and in good faith with the reunification case plans imposed by the court, including:
   - Completion of over 60 hours of parenting classes
   - Participation in over 19 therapy sessions
   - Attendance at all supervised visitation sessions since December 2024, with documented evidence of appropriate parenting
   - Filing of motions, grievances, and complaints in state and federal venues to preserve my civil and procedural rights
   - Completion of 8 counseling sessions as advised in the July 2023 case plan.

## II. FACTUAL BASIS FOR THIS COMPLAINT

3. My children were unlawfully seized by Children and Family Services (CFS) using an petition containing false, unverified, and misleading allegations, in violation of:
   - **Fourth Amendment** – unlawful seizure without probable cause
   - **Fourteenth Amendment** – deprivation of familial association without due process
   - **WIC §§ 306, 309, 319, 361** – failure to follow statutory removal procedures

4. On or about May 12, 2023, I submitted indisputable exculpatory evidence to CFS that refuted the basis for removal:

- o Medical records confirming no abuse or neglect
- o Phone records disputing claims that I was uncooperative
- o Photographs verifying pre-existing conditions (shape of Aaron's head)
- o Photographs of my pantry, and refrigerator
- o Receipts proving consistent provision of food and basic needs
- o IEPs and Regional Center documentation establishing disabilities and accommodations
- o Psychological evaluations documenting self-injurious behaviors predating removal
- o Parenting/IEP advocacy classes taken predating removal

5. Rather than dismiss the case, CFS deliberately engaged in a pattern of concealment and retaliation:
   - o Withheld exculpatory evidence from court, violating *Brady v. Maryland*, 373 U.S. 83
   - o Repeatedly postponed hearings for 15 months under the guise of "child's best interest"
   - o Interviewed the children seven or more times, without accommodations and with inducements such as snacks and other incentives, violating:
     - ▪ **WIC § 827(a)(1)(P)** – protects against repeated trauma-inducing interviews
     - ▪ **WIC § 355.1(h)** – prohibits reliance on coached or inconsistent child statements
     - ▪ **WIC § 350(a)(1)** – guarantees fair hearings and reliable evidence
     - ▪ **WIC § 361(c): CFS Manual § 31-125.12; ADA 42 U.S.C. § 12132**

6. My educational rights were stripped without notice of a hearing, obstructing:
   - o IEP meetings
   - o School communications
   - o Necessary disability accommodations
   - o District staff made multiple calls to CFS to get them to remove my education rights simply because I advocated for services for my children
   - o Violations include:
     - ▪ **WIC § 361(a)**
     - ▪ **20 U.S.C. § 1415(b)(1)**
     - ▪ **California Education Code §§ 56000 et seq.**

7. These rights were only restored April 3, 2025, after formal complaints proved:
   - o Children denied special education services
   - o School staff failed to follow IEPs

- o  Severe increase in behaviors due to lack of services in the IEPs
- o  Academic regression due to noncompliance with federal law

8. My children were placed with Antonette Smith, despite documented objections, violating **WIC § 361.3**. Ms. Smith:
   - o  Coached false reports
   - o  Threatened silence about abuse
   - o  Locked the children in the bedroom with a child safety lock on the outside of the door
   - o  Removed Miracle's braces without doctor's authorization
   - o  Used corporal punishment and intimidation
   - o  Denied necessary assessments
   - o  Failed to take care of the children's medical and educational needs

9. CFS failed its statutory duty to protect my children:
   - o  **WIC § 16501.1(b)(4)** – duty to protect from harm
   - o  **WIC § 16001.9(a)(1), (4), (7)** – rights to safety and dignity
   - o  **WIC § 16002(a)** – presumption of family placement

10. CFS ignored qualified relatives, violating:

- **WIC § 309(d)(1)** – requires home assessment and background check
- **WIC § 361.3(a)** – relative placement preference
- **Health & Safety Code §§ 1521.5, 1522** – criminal record clearance

11. Initial placement was reckless and unlawful:

- Children forced to sleep in CFS office for 3 days, violating:
   - o  **WIC § 16501.1(b)(4)**
   - o  **CDSS MPP § 31-405**
- Children escaped the office due to lack of supervision

12. CFS then placed them with Belinda White (maternal grandmother):

- Documented history of drug and alcohol abuse
- Children were removed from her care August 2018 due to her violent history
- No background check or home inspection completed before placement April 2023-May 2023
- While in her care:
   - o  Children were hit with paint sticks as punishment

- o CFS coached children to falsely accuse me after I reported the incident
- o When Aaron clarified it was Ms. White, CFS ignored the correction
- Violates:
  - o **WIC § 355.1(h)** – coached statements invalidate proceedings
  - o **Penal Code § 118.1** – false reports by public officers
  - o **Civil Code § 52.1** – coercion to interfere with rights

13. There is ongoing collusion by court and agency actors:

- Judge Mapes, County Counsel, Liseth Robledo, Marina White, and Attorney James Tritt:
  - o Denied or ignored motions to compel, relieve counsel, and recuse judge
  - o Allowed ex parte communications
  - o Suppressed evidence
  - o Obstructed due process and manipulated case trajectory
  - o Violated **WIC § 349**, **WIC § 350**, and due process clauses
  - o Failed to keep the children safe while in custody
  - o Retaliated against me for complaints file

## III. VIOLATIONS OF LAW

**Constitutional Violations:**
- **Fourth Amendment** – Unlawful seizure of children without probable cause
- **Fourteenth Amendment** – Denial of due process and familial association
- **First Amendment** – Retaliation for protected advocacy and complaints

**Federal Statutory Violations:**
- **42 U.S.C. § 1983** – Civil rights violation under color of state law
- **42 U.S.C. § 1985** – Conspiracy to interfere with civil rights
- **18 U.S.C. § 241** – Conspiracy against rights
- **18 U.S.C. § 242** – Deprivation of rights under color of law
- **18 U.S.C. § 1001** – False statements to a government agency
- **18 U.S.C. § 1512** – Witness tampering
- **18 U.S.C. § 1513** – Retaliation against a party providing truthful information
- **18 U.S.C. § 1962 (RICO)** – Racketeering and pattern of obstruction and fraud
- **20 U.S.C. § 1415** – IDEA procedural safeguards violation
- **42 U.S.C. § 12132** – ADA Title II violation (failure to accommodate disabilities)
- **FERPA** – Improper handling and sharing of education records

**California Statutory Violations:**
- **WIC §§ 306, 309, 319, 361** – Improper removal and deprivation of parental rights
- **WIC § 361.3** – Failure to prioritize relative placement
- **WIC § 366.21, 366.22, 366.26** – Wrongful delay or denial of reunification
- **WIC § 355.1(h)** – Use of coached or unreliable child statements
- **WIC § 16501.1(b)(4)** – Failure to ensure child's physical/emotional safety

- **WIC § 16001.9(a)** – Violation of foster youth bill of rights
- **WIC § 16002(a)** – Right to family connection and placement
- **Health & Safety Code §§ 1521.5, 1522** – Unscreened placements
- **Penal Code § 118.1** – Filing false reports by government officials
- **Penal Code § 11166** – Failure of mandated reporters to act
- **Civil Code § 52.1 (Bane Act)** – Coercion or threats to interfere with legal rights
- **California Education Code §§ 56000 et seq.** – Special education rights violations

## IV. RELIEF REQUESTED

1. Remove Judge Mapes, County Counsel Marina White, and James Tritt
2. Immediate family placement or reunification
3. Injunction halting termination/adoption
4. Investigations by DOJ, FBI, BAR
5. Civil/criminal sanctions for all involved
6. Damages for emotional distress and civil rights violations

## V. CLOSING DECLARATION

Pursuant to **28 U.S.C. § 1746**, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 10, 2025
Location: **San Bernardino County, California**
Signature:
**Name: Latesha Howard**

State of California
County of SAN BERNARDINO

On 07-10-2025 before me, FNU NIVEDITA NOTARY PUBLIC
(Notary Public's name)

personally appeared **Latesha Howard**,
who proved to me on the basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that she executed the same in her

authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**Signature of Notary Public** _____

*(Notary Seal)*

```
FNU NIVEDITA
Notary Public - California
Los Angeles County
Commission # 2494739
My Comm. Expires Jul 16, 2028
```

# Exhibit 2

Human Services /
Children and Family Services
15020 Palmdale Rd.
Victorville, California 92392
Gerald Stone, SSP
(760) 243-6604
V8105
DSS No.

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO

APR 25 2023

BY: Eunice Avila          Deputy

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN BERNARDINO
860 E. Gilbert Street, San Bernardino, California 92415-0955

### DETENTION REPORT

| Hearing Date | Hearing Time | Dept./Room | Hearing Type/Subtype |
|---|---|---|---|
| 04/26/2023 | 08:30 a.m. | 6 | Detention / 300 |

### IN THE MATTER OF

| Name | Date of Birth | Age | Sex | Court Number |
|---|---|---|---|---|
| Amarrie Le'shai Hunter | 08/18/2008 | 14 Yrs. | F | J296897 |
| Aaron Zyair Howard | 01/19/2014 | 9 Yrs. | M | J296896 |
| Paris Amarii Howard | 08/17/2015 | 7 Yrs. | F | J296895 |
| Miracle London Howard | 02/05/2017 | 6 Yrs. | F | J296894 |

### SUMMARY RECOMMENDATION

It is recommended that the children, Amarrie Le'shai Hunter, Aaron Zyair Howard, Paris Amarii Howard, and Miracle London Howard be detained with a suitable foster home or relative placement, in the custody of Children and Family Services (CFS); CFS to supervise and report.

---

Confidential in accordance with Penal
Code Section 11167.5 and/or WIC
Sections 827 and 10850.

Detention Report
04/26/2023

1



Amarrie Le'shai Hunter, et al

## PARENTS/ CHILDREN'S WHEREABOUTS

| Name/ Birthdate | Address/ Phone | Relationship/ To Whom |
|---|---|---|
| Latesha Howard 12/17/1980 | Confidential. | Mother/ Amarrie Le'shai Hunter, Aaron Zyair Howard, Paris Amarii Howard & Miracle London Howard |
| Anthony L. Hunter 05/14/1985 | Confidential. | Father (Alleged)/ Amarrie Le'shai Hunter |
| Unknown Father | Whereabouts Unknown | Fatther (Alleged) Aaron Zyair Howard, Paris Amarii Howard & Miracle London Howard |

## CHILDREN'S WHEREABOUTS

The children, Amarrie Le'shai Hunter, Aaron Zyair Howard, Paris Amarii Howard & Miracle London Howard, are currently with mother, Latesha Howard. The address is confidential and on file with CFS.

## INDIAN CHILD WELFARE ACT STATUS

The Indian Child Welfare Act does not apply.

| Person/ Relationship To Minor (Who The Inquiry Made With) | Date Inquiry Was Made | Native American Ancestry | Follow Up Action | Tribal Identification | Date ICWA 30 Sent To Tribe | Response From Tribe | Finding Made |
|---|---|---|---|---|---|---|---|
| MOTHER Latesha Howard | Unable to contact | N/A | N/A | N/A | N/A | N/A | N/A |

Amarrie Le'shai Hunter, et al

## NOTICES

| Name | Relationship | Method | Notice Date |
|---|---|---|---|
| Latesha Howard | Client/ Mother (Adoptive) | Telephone | 04/21/2023 |
| Amarrie Le'shai Hunter | Client/ Sister | Unable to contact | Not Noticed |
| Anthony L. Hunter | Amarrie Le'shai Hunter / Father (Alleged) | Absent Parent Search Initiated | Not Noticed |
| Unknown Father | Client/ Father (Alleged) | Not Noticed | Not Noticed |

## LEGAL HISTORY

### 300 WIC Subsection(s)

| Initial Removal | Initial Detention Order | Initial Jurisdiction Finding |
|---|---|---|
| Not detained | | |
| Initial Disposition Order | Initial 364 FM Review | Second 364 FM Review |
| Initial 366.21(e) – 6 Month FR Review | Initial 366.21(f) – 12 Month FR Review | Initial 366.22 – 18 Month FR Review |
| Initial 366.25 – 24 Month/PP Review | Initial 366.3 PP Review | Initial NMD Review |
| FR Services Terminated | Non-Reunification Ordered | |
| Initial Permanent Plan: Type/ Date Ordered | | Current Permanent Plan: Type/ Date Ordered |

## PROCESS OF REMOVAL

Detention Affidavit – **CFS 43 DETENTION** –Detention Affidavit is attached

## REASON FOR HEARING

| Date/Time | Removed From | Relationship | Removal Reason |
|---|---|---|---|
| Not Detained | Latesha Howard | Mother | 300(a)(b)(j) |

There are multiple referrrals received within the past twelve months alleging Phisical Abuse, General Neglect, and Emotional abuse of the children, Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter. On 04/19/2023, a referral was received

Amarrie Le'shai Hunter, et al

alleging physical abuse to the child Aaron Howard. All three children have moderate to profound autism and require special education and behavior management in an educational setting. Two of the children have no ability to consistently communicate and report back regarding how a bruise or injury may have ocurred. The oldest child, Aaron, does have some ability to respond to an interview and legitimately disclose general events that have occurred. SSP Stone requested that the mother , Latesha Howard, allow all three children to be examined at the Child Assessment Center in San Bernardino in order to determine if there are physical signs of child abuse. The mother has refeused to allow such an exam. SSP Stone also requested, and was granted, a warrant to have all three children examined for signs of physical abuse at the Child Assessment Center. SSP Stone attempted to serve said warrant at the home where the mother resides with all three children. SSP Stone was told through the electronic doorbell that the mother was out of town and wouldn't be available for a week. Additionally, Latesha Howard informed SSP Stone that her attorney would contact him to discuss receiving the warrant. There was no contact attempted by an attorney. Several days later, SSP Stone was informed by one of the children that they were all at home when SSP Stone attempted to serve the warrant, but they were all told not to answer the door when SSP Stone was outside in the front.

On the date of 04/19/2023, another referal was received and determined to be an immediate response referral. The referral included allegations of physical abuse with the child, Aaron Howard as the victim. It was reported that he had a large knot on the back of his head as a resuly of being hit by his "auntie" which is what he calls his mother. All three children were adopted by Latesha Howard, yet they refer to her as their auntie. Other allegations included the mother leaving Aaron with a full diaper and refusing to change him as he was about to be transported to school. Additionally it was alleged that the mother witholds food and water because she doesn't want to deal with Aaron soiling or wetting his diaper or clothing.

Amarrie Le'shai Hunter, et al

In response to the immediate response referral, SSP Stone attempted to make contact at the home in Oak Hills on Mesquite Rd. The white gate was closed and the property wasn't accessible. SSP Stone attempted to make contact by phone and ended up leaving a message with no return call. On the morning of 04/20/2023, SSP Stone made contact with the alleged victim, Aaron Howard at school. SSP Stone was able to conduct an interview with Aaron Howard and ithe child disclosed that the "Auntie", Latesha Howard, hit Aaron on the back of his head hard with her knuckles causing a significantly raised and swollen bump on the back of his head. Aaron was able to verbalize that he got in trouble at home because he was playing with his sister Paris and the kids aren't allowed by the mother to play together. Aaron related that he was hit hard on the back of his head and made to stand in the corner. SSP Stone was able to see the risen and swollen area on the back of Aaron's head nearly two days after it happened. When asked about what his "Auntie" does with Miracle and Paris when they get in trouble, Aaron made a swinging and punching motion, both with an open hand and closed fist, saying she hits them and also kicks them. Aaron was not able to provide specific times or significant details due to his age and disability, however he was definite and consistent about his "Auntie" hitting and kicking he and his sisters. SSP Stone also asked Aaron what he would wish for. Aaron said he would like to have a nice mommie and not to get any more whoopings. When asked about the whoopings, Aaron described being hit with a belt, usually when his "auntie" gets mad because he runs away. Aaron talked about running away when they were at Universal Studios last month. He said he ran away because his "auntie" was being mad at him for not keeping up with the rest of them and he didn't want to be around his "auntie" any more and he was afraid she would hit him.

When SSP Stone was at the school, SSP Stone was able to interview the behavior specialist who works withy Aaron on a daily basis. The behavior specialist related that, while picking up Aaron for school one morning, he informed the mother, Latesha

Amarrie Le'shai Hunter, et al

Howard, that Aaron had a full diaper. The behavior specialist desribed going to the front door and letting Latesha Howard know about the diaper and requesting she change it. He went on to say that Latesha Howard, Aaron's mother, replied she had to go somewhere and said they could change him at school. The ride to school is about 35 minutes where Aaron ended up having to sit in a soiled diaper. The behaviorist related that, Ms. Howard went to the front drive, started her car because it was a cold morning, and then went back inside and shut the door without saying anything. The behavior specialist also stated that she doesn't let Aaron go into the restroom to wash his hands because he'll end up drinking water from the sink and she thinks that will make him wet his pants. Additionally, the behavior specialist related that Aaron says he is afraid to knock on the door or ring the doorbell to be allowed in the house when he gets back from school because his "auntie" will get mad at him. He has asked his behavior specialist to go up to the house with him so he won't get in trouble. The behavior specialist indicated that Aaron has a lot of fear of his "Auntie."

       Due to their ages and the severity of their disability, these three children cannot readily speak up and defend themselves. They all have poor cognition and difficulty relating events and reporting what has happened. The recent disclosure by the older child, Aaron are very concerning for issues of safety and risk. SSP Stone attempted on 04/20/2023 to contact Latesha Howard and arrange to meet with her in person in hopes of potentially being able to explore the development of a safety plan. Latesha Howard replied that she was not willing to meet with SSP Stone or anyone else from Child and Family Services until she had contacted an attorney and discussed the situation with that attorney. There have been repeated referrals received alleging that the children have all made statements about being hit or kicked by their "auntie." It has been difficult on prior referrals to confirm or substantiate the allegations due to the challenges in communicating and interviewing these children.

Amarrie Le'shai Hunter, et al

Latesha Howard also has a natural child, Amarrie Hunter, Age 14. It was belived that Amarrie Hunter did not reside at the home with her mother, yet actually resided with her father in the Los Angeles area. On the date of 04/21/2023, Latesha Howard informed SSP Stone that her daughter, Amarrie Hunter does in fact reside with her and that her father is not a possible resource for her to live with. With each referral received by Child and Family Services, Ms. Latesha Howard has become increasingly un cooperative, blaming the referrals on the various schools where the children attend.

Due to the disclosure by Aaron Howard and the physical evidence that matches his statement as to how he was injured, It is necessary for the department of Child and Family Services to protec these children from any further abuse or neglect. It is also necessary to detain Amarrie Hunter and place her in protective custody due to the substantial risk that she may also suffer from abuse.

## PATERNITY/LEGAL RELATIONSHIPS

The information gathered was not sufficient to make a recommendation to court at this time.

## CURRENT CIVIL/CRIMINAL HISTORY

None

## Additional Legal History

The children, Aaron Howard, Miracle Howard and Paris Howard were initially adopted by the mother on 01/31/2021. Prior to the adoption, the children were known as Aaron Burkett II, Miracle Legardy and Paris Burkett, having been removed from the mother Shaerice Tiggs, and the father, Aaron Devonte Burkett.

**Prior Child Welfare History from the prior case**

| Initial Removal | Initial Detention Order |
|---|---|
| Aaron – 02/10/2017 | Aaron – 02/16/2017 |
| Paris – 02/10/2017 | Paris – 02/16/2017 |
| Miracle – 02/10/2017 | Miracle – 02/16/2017 |

Amarrie Le'shai Hunter, et al

## EFFORTS TO LOCATE ABSENT PARENTS

On April 24, 2023 this SW attempted to locate Anthony Hunter by calling their last known phone number.

## REASONABLE EFFORTS AND/OR PRIOR INTERVENTION/SERVICES OFFERED

Risk assessment services were provided to the family. Reasonable efforts were made to prevent or eliminate the need for the children's removal from the home. The following preplacement preventive services were provided but were not effective in preventing or eliminating the need for removal of the children from the home:

Case Management and other services.

## AVAILABLE SERVICES/REFERRAL METHODS WHICH COULD PREVENT THE NEED FOR FURTHER DETENTION AND/OR FACILITATE FUTURE RETURN OF THE CHILD(REN) TO PARENTS/LEGAL GUARDIANS

For the children, Amarrie Le'shai Hunter, Aaron Zyair Howard, Paris Amarii Howard, and Miracle London Howard, available services to facilitate the future return of the children are:

Counseling, Case Management, Parent Training, and other services.

## DEVELOPMENT OF SAFETY NETWORK

The family finding questionnaire is in progress for identification of a safety network.

## RELATIVE PLACEMENT INFORMATION

The mother has not been cooperative in providing any relative information. There are no relatives to consider for placement.

## FAMILY VISITATION

It is recommended that the children, Aaron Howard, Paris Howard, and Miracle Howard have once weekly visitation for two hours with the mother, Latesha Howard, supervised by the department.

Amarric Le'shai Hunter, et al

It is recommended that the child, Aamarie Hunter have once weekly visitation for 2 hours, supervised by the department.

Amarrie Le'shai Hunter, et al

## RECOMMENDATION

      **It is respectfully recommended that the Court make the following findings and orders:**

**Detention Hearing (Removal)**

**FINDINGS**

**Noticing:**

    1.    Court has read and considered the social worker's report dated 04/25/2023.

    2.    Notice of the date, time, and location of this hearing was given to all necessary parties as required by law.

**Title IV/Removal/Placement:**

    3.    A Prima Facie case is established that the child comes within WIC 300.

    4.    Prima Facie case established for detention out-of-home.

    5.    Continuance of 's in the home of the parent or legal guardian is contrary to Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter's welfare as:

        a.    There is a substantial danger to the physical health of Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter suffering severe Physical Harm and there are no reasonable means to protect Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter physical or emotional health without removing Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter from Latesha Howard's physical custody.

    6.    Reasonable efforts have been made to prevent or eliminate the need for removal of Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter from the home. Referral to public assistance would not eliminate need to take temporary custody from James Harold and Aundrea Hall, or prevent the need for further detention.

**Relative Placement/Assessment:**

Amarrie Le'shai Hunter, et al

8.  There are no known relatives at this time.

9.  There may be relatives able, approved, and willing to care for Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter

**Parentage:**

10.  The Court inquired of the children's parents present at the hearing and other appropriate persons present as to the identity and addresses of all presumed or alleged parents of the child.

**Advisal's:**

11.  The Mother, Father and children are informed and advised of: the right to be present and to be represented by counsel at every stage in the proceedings and the right to be informed of the contents of the petition; the nature of and possible consequences of juvenile court proceedings; the reasons for the initial detention and the purpose and scope of the detention hearing if the child is detained; the right to have a child who is detained immediately returned to the home if the petition is not sustained; the time for services will commence on the date the petition is sustained or 60 days from the date of the initial removal, whichever is earlier; that the time for services will not exceed 12 months for a child aged 3 years or over at the time of initial removal or 6 months for a child under the age of three at the time of the initial removal or for the member of a sibling group that includes such a child if the parent/legal guardian fails to participate regularly and make substantive progress in any court-ordered treatment program; and the right to a hearing by the court on the issues presented by the petition.

**ORDERS**

**Removal:**

1.  The children, for Aaron Howard, Miracle Howard, Paris Howard, Amarrie

Amarrie Le'shai Hunter, et al

Hunter are detained and removed from Latesha Howard.

2.    Temporary care and placement of the children is vested with the county agency; the county agency to supervise and report.

3.    The county agency is authorized to contact the children at any location to determine the children's well-being.

4.    Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter are detained in appropriate placement.

**Parent Requirements:**

5.    Latesha Howard and Anthony Hunter are ordered to complete the PATERNITY INQUIRY to be submitted to the social worker prior to the Jurisdictional Hearing.

6.    Latesha Howard and Anthony Hunter are ordered to disclose to the county agency the names, residences other known identifying information of all known maternal and paternal relatives of for Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter by completing the FAMILY INFORMATION SHEET and by returning it to the county agency by the Dispositional Hearing.

7.    There shall be no discussion of the petition, its contents, underlying facts or future placement with for Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter by James Harold and Aundrea Hall.

8.    Latesha Howard and Anthony Hunter are ordered to release to the county agency any relevant records of for Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter , including but not limited to:  psychiatric, psychological, medical, drug or alcohol records, and educational records.

9.    Latesha Howard and Anthony Hunter are ordered to complete ICWA 020 regarding Indian heritage.

10.    Latesha Howard and Anthony Hunter are ordered to complete JV 140.

Amarrie Le'shai Hunter, et al

11.    Parents ordered to produce birth certificates on all children.

**Authorizations:**

12.    The county agency is authorized to release the social workers' reports and attachments as necessary to all licensed, treating, and court-appointed therapists, interns, psychologists and psychiatrists to be used only therapeutically, and not to be disseminated to any third parties.  Reports and attachments are to remain confidential.

13.    The foster parent/relative caregiver to monitor for Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter  medical, dental, and educational status and keep/attend regular appointments.

14.    The county agency is authorized to consent to routine medical, mental health, and dental care by a licensed practitioner, including physical examinations, X-rays, immunizations and other routine treatment.

**Visitation**

15.    Visitation for Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter  with Latesha Howard and Anthony Hunter is ordered.

a.    Supervised by the county agency or delegate for 1 time(s) per week for 2 hours. The county agency has authority to increase frequency, duration, and delegate supervision.

b.    Parents are not to be under the influence of controlled substances.

c.    The county agency is authorized to release information as necessary to individuals delegated with the responsibility of supervising court ordered visitation.

16.    Pending the development of the Case Plan, the county agency shall provide services in order to reunify for Aaron Howard, Miracle Howard, Paris Howard, Amarrie Hunter with the Mother and Father.

Amarrie Le'shai Hunter, et al

17.   All prior orders not in conflict with this order shall remain in full force and effect.

18.   Matter continued to _____ for Jurisdictional/ Dispositional hearing.

*(handwritten text, illegible)*

Amarrie Le'shai Hunter, et al

**Respectfully Submitted,**

Jeany Zepeda, Director of
Children and Family Services/
Human Services

By

▶ _____     4-25-23
Gerald Stone, SSP-V8105                       Date
(760) 243-6604

▶ _____     4-25.2023
Pierre Duong, SSSP                            Date
(760) 243-6739

Detention Report
04/26/2023                                          15

# Exhibit 3

1   **Human Services System/**
**Children and Family Services (CFS)**
2   NDR-Victorville
15020 Palmdale Road
3   Victorville, California 92392
Tiyana Benitez, SSP
4   (760) 243-6678
No. V8804
5   DSS No. 3495797

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
JUVENILE COURT

**MAY 18 2023**

*Brittney M. Diaz*
BY: BRITTNEY N. DIAZ        DEPUTY

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN BERNARDINO
860 E. Gilbert Street, San Bernardino, California 92415-0955

## JURISDICTION/DISPOSITION (J/D) REPORT

| **Hearing Date** | **Hearing Time** | **Dept./Room** | **Hearing Type/Subtype** |
|---|---|---|---|
| 05/22/2023 | 08:30 a.m. | 06 | Jurisdictional/Dispositional |

### IN THE MATTER OF

| **Name** | **Date of Birth** | **Age** | **Sex** | **Court Number** |
|---|---|---|---|---|
| Amarrie Le'shai Hunter | 08/18/2008 | 14 Yrs. | F | 0000296897 |
| Aaron Zyair Howard | 01/19/2014 | 9 Yrs. | M | 0000296896 |
| Paris Amarii Howard | 08/17/2015 | 7 Yrs. | F | 0000296895 |
| Miracle London Howard | 02/05/2017 | 6 Yrs. | F | 0000296894 |

### SUMMARY RECOMMENDATIONS

**A.    For Jurisdiction:**

It is respectfully requested that the Court grant a 45-day continuance to allow time for the children, Aaron Zyair Howard, Paris Amarii Howard, and Miracle London Howard to complete forensic interviews with the Children's Assessment Center (CAC) and for the Department to receive requested law enforcement reports, school and medical records.

**B.    For Disposition:**

---

Confidential in accordance with Penal
Code Section 11167.5 and/or WIC
Sections 827 and 10850.

Jurisdiction/Disposition
Report
05/22/2023

1

SCANNED    E-Filed

Amarrie Le'shai Hunter, et al                                                    0000296897

It is respectfully requested that the Court grant a 45-day continuance to allow time for the children, Aaron Zyair Howard, Paris Amarii Howard, and Miracle London Howard to complete forensic interviews with the CAC and for the Department to receive requested law enforcement reports, school and medical records.

**PARENTS'/CHILDREN'S WHEREABOUTS**

| Parents' Names/<br>Birth Dates | Address/<br>Phone | Relationship/<br>To Whom |
|---|---|---|
| Latesha L. Howard<br>12/17/1980 | 10420 Mesquite Street<br>Oak Hills, CA 92344<br>(760) 244-6354 | Mother/<br>Amarrie |
| | | Mother<br>(Adoptive)/<br>Aaron, Paris,<br>and Miracle |
| Anthony L. Hunter<br>05/14/1985 | 721 Larch Street, Apt. 6<br>Inglewood, CA 90301<br>(310) 921-0739 | Father<br>(Alleged)/<br>Amarrie |

**Children's Whereabouts**

The child, Amarrie Le'shai Hunter is maintained in the home of her father, Anthony Hunter. The child, Aaron Zyair Howard, is currently hospitalized at the Loma Linda Behavioral Medical Center. The children, Paris Amarii Howard, and Miracle London Howard are placed in the confidential small family home Tender and Kind Hearted. The addresses are on file with CFS.

2

Jurisdiction/Disposition
Report
05/22/2023

Amarrie Le'shai Hunter, et al                                                    0000296897

## ATTORNEYS

| **Name** | **Address/ Phone** | **Representing** |
|---|---|---|
| CAG Child Advocacy Group | 685 Carnegie Drive, Ste. 200 San Bernardino, CA 92408 (909) 890-9977 | Amarrie Hunter and Aaron, Paris, and Miracle Howard |
| Cesar O. Montoya | 206 W 4th Street, Ste. 437 Santa Ana, CA 92701 (714) 732-0287 | Latesha L. Howard |
| CC County Counsel | 385 N. Arrowhead Avenue 4th Floor San Bernardino, CA 92415 (909) 387-5455 | Child Welfare |

## INDIAN CHILD WELFARE ACT STATUS

- The Indian Child Welfare Act does not apply.

| **Child's Name** | **Native American Child (yes, no, maybe)** | **Tribe (If Known)** | **ICWA Eligible (yes, no, maybe)** | **ICWA Placement (yes, no, pending If no enter justification below the table for NOT pursing placement with a Native American)** |
|---|---|---|---|---|
| Amarrie Hunter | No | N/A | No | N/A |
| Aaron Howard | No | N/A | No | N/A |
| Paris Howard | No | N/A | No | N/A |
| Miracle Howard | No | N/A | No | N/A |

| **Person/ Relationship To Minor (Who The Inquiry Made With)** | **Date Inquiry Was Made** | **Native American Ancestry** | **Follow Up Action** | **Tribal Identification** | **Date ICWA 30 Sent To Tribe** | **Response From Tribe** | **Finding Made** |
|---|---|---|---|---|---|---|---|
| MOTHER Latesha Howard | 5/15/23 | No | N/A | N/A | N/A | N/A | N/A |
| FATHER Anthony Hunter | 5/10/23 | No | N/A | N/A | N/A | N/A | N/A |

## INDIAN CHILD WELFARE ACTIVE EFFORTS

3

| 1 | Amarrie Le'shai Hunter, et al | 0000296897 |

On May 10, 2023, SSP Stone asked the father, Anthony Hunter about any possible Native American Ancestry. The father stated there is no Native American Ancestry. On May 15, 2023, the undersigned asked the mother about any possible Native American Ancestry. The mother stated there is no Native American Ancestry. On May 16, 2023, the undersigned inquired with the maternal uncle Mitchell Stephens and his spouse, Leslie Crosby about the children's Native Ancestry. The relatives denied any knowledge of Native Ancestry in the family. At this time, the Department has no reason to believe the children are Indian children.

**NOTICING**

| Name | Relationship | Method | Notice Date |
|---|---|---|---|
| CAG Child Advocacy Group | Attorney/ Amarrie Hunter and Aaron, Paris, and Miracle Howard | Notice Given By Court | 04/27/2023 |
| CC County Counsel | CWS Attorney | Notice Given By Court | 04/27/2023 |
| Latesha L. Howard | Client/ Mother | In Person – Court | 04/27/2023 |
| Amarrie L. Hunter | Client | Notice Given By Social Worker | 05/10/2023 |
| Anthony L. Hunter | Client/ Father (Alleged) | Notice Given By Social Worker | 05/10/2023 |
| Cesar O. Montoya | Attorney/ Latesha Howard | Notice Given By Court | 04/27/2023 |

4

Amarrie Le'shai Hunter, et al                                                    0000296897

**A.    Not Present at Court/Not Served:**

Not applicable.

**B.    Child Age 10 and Older Notice:**

The child, Amarrie L. Hunter, who is age ten (10) and above, was informed by the Department on May 10, 2023 of her right to attend the Hearing. The child stated that she does not want to attend Court due to the distance from the father's home.

**C.    Dependent Sibling Notice:**

Not applicable.

**D.    Relative Notification:**

The relatives, Mitchell Stephens and Leslie Crosby, were informed by the undersigned on May 16, 2023 of their right to attend the Hearing. The relatives stated they will not be attending.

**LEGAL HISTORY**

**300 WIC Subsection(s)**
(j) – Ammarie
(a) (b) – Aaron
(a) (b) (j) – Paris & Miracle

| **Initial Removal** 04/26/2023 | **Initial Detention Order** 04/26/2023 | **Initial Jurisdiction Finding** |
|---|---|---|
| **Initial Disposition Order** | **Initial 364 FM Review** | **Second 364 FM Review** |
| **Initial 366.21(e) – 6 Month FR Review** | **Initial 366.21(f) – 12 Month FR Review** | **Initial 366.22 – 18 Month FR Review** |
| **Initial 366.25 – 24 Month/PP Review** | **Initial 366.3 PP Review** | **Initial NMD Review** |
| **FR Services Terminated** | **Non-Reunification Ordered** | |
| **Initial Permanent Plan: Type/ Date Ordered** | | **Current Permanent Plan: Type/ Date Ordered** |

5

Amarrie Le'shai Hunter, et al                                              0000296897

## JURISDICTION

### Allegations

**Regarding:** Amarrie

J-1.    The child, Amarrie Le'Shai Hunter, may have suffered abuse and neglect, or is at risk of suffering abuse and neglect, as evidenced by the physical abuse and neglect suffered by the bother, Aaron Zyair Howard at the hands of the mother, Latesha Howard.

**Regarding:** Aaron

A-1.    the mother, Latesha Howard, caused injury to Aaron Howard by striking him with her hand on the back of his head in a manner severe enough to leave a large raised lump that lasted at least causing significant injury to the child's head and causing the child significant pain.

B-2.    The mother, Latesha Howard, has failed to provide a safe and appropriate living environment for the child, Aaron Zyair Howard, by failing to provide adequate food and water, and intentionally allowing the child, Aaron Zyair Howard, to remain in a soiled diaper for an extended period of time after being notified of a need to be changed

**Regarding:** Paris

A-1.    The mother, Latesha Howard, caused injury to Paris Amarii Howard, therefore causing injury to the child and causing the child significant pain.

B-2.    The mother, Latesha Howard, has failed to provide a safe and appropriate living environment for the child, Paris Amarri Howard by failing to provide adequate food and water, and intentionally allowing the child as evidenced by her arriving at school thirsty and hungry.

6

Amarrie Le'shai Hunter, et al                                                    0000296897

J-3.    The child, Paris Amarii Howard, may have suffered abuse and neglect, or is at risk of suffering abuse and neglect, as evidenced by the physical abuse and neglect suffered by the brother, Aaron Zyair Howard at the hands of the mother, Latesha Howard.

**Regarding:** Miracle

A-1.    The mother, Latesha Howard, caused injury to Miracle London Howard, therefore causing injury to the child and causing the child significant pain.

B-2.    The mother, Latesha Howard, has failed to provide a safe and appropriate living environment for the child, Miracle London Howard by failing to provide adequate food and water, and intentionally allowing the child as evidenced by her arriving at school thirsty and hungry.

J-3.    The child, Miracle London Howard, may have suffered abuse and neglect, or is at risk of suffering abuse and neglect, as evidenced by the physical abuse and neglect suffered by the bother, Aaron Zyair Howard at the hands of the mother, Latesha Howard.

**Supporting Evidence**

*Allegation J-1 (for the child, Amarrie) A-1, B-2 (for the children Aaron, Paris, and Miracle) and J-3 (for the children Paris and Miracle) are supported by the following evidence:*

The children, Aaron, Paris, and Miracle were assessed by the Department's Public Health Nurse (PHN) staff while in the office awaiting placement. On April 26, 2023, the Department's PHN assessed the posterior side of the child, Aaron's head. SSP Stone took the attached photograph of the back of the child, Aaron's head on April 20, 2023. The PHN findings indicate that the child did not complain of pain and the origin of the bump could not be determined. Per the findings, SSP Stone advised the PHN that the bump was "allegedly caused by the caretaker, date unknown". On April 26, 2023, SSP Stone transferred the

Jurisdiction/Disposition
Report
05/22/2023

Amarrie Le'shai Hunter, et al                                      0000296897

children to Loma Linda Hospital for a medical evaluation as recommended by the CAC staff due to the "large persistent bump" observed on the child, Aaron's head. SSP Stone noted that the child, Aaron was given an oral sedative to allow for the pediatric physician to examine and treat the child as his behaviors were "bizarre and unpredictable". No medical reports regarding the visit were received. The undersigned requested Loma Linda records for the children.

       The child, Aaron, was examined by CAC Nurse Practitioner Novoa on May 09, 2023. The attached preliminary opinion indicated physical abuse as it states the child has scars that can support his disclosure of being struck with an implement and made clear disclosures of physical abuse. Preliminary medical opinion for the child, Aaron consisting of one (1) page is attached. The children, Paris and Miracle completed forensic medical exams at the CAC on or around May 10, 2023. No medical report regarding the findings has been received. A forensic interview was scheduled for the child, Aaron on May 17, 2023.

       On May 13, 2023, the child's caregiver reported the following concerns regarding the child's well-being and behavioral health:

       Caregiver, Ms. F. stated she contacted law enforcement regarding the child, Aaron, as his behaviors have increased/escalated, and he assaulted the caregiver by biting and scratching her. Law enforcement informed Ms. F. that "they aren't babysitters" and were unable to assist. Ms. F. reported that she was going to take the child to Loma Linda Behavioral Medical Center (LLBMC) as he is a danger to himself and others. She reported that the Department's central placement unit (CPU) asked her to keep the child for "five more days" after she provided a written 3-day notice to have the child removed from her home as the other children in the home were afraid.

       On May 15, 2023, the undersigned received an email update from the child, Aaron's caregiver, stating that the child was taken to LLBMC as the caregiver feared for the family's safety due to the child's behavior in the home. The caregiver reported the following:

8

Amarrie Le'shai Hunter, et al                                                    0000296897

*"Aaron Z. Howard is at Loma Linda Hospital children ER on a 51/50 hold and awaiting a bed at the children behavioral health hospital where he will be treated. Aaron Z. Howard continues to display aggressive dangerous behaviors. Aaron Howard is endangering the life of himself and others around him. He is endangering the kids around him in my home. We are afraid for our safety. Aaron hit, kick and bite adults and kids. Aaron states that the voices is telling him to hurt and kill us. Aaron has displayed drawings of what and how he will kill us. Aaron is attacking the driver and everyone in the car, theming to jump out of wind And doors. On 05/08/23 I have send over an emergency placement letter for Aaron Z. Howard. You Grace upon Grace is giving a seven (7) day notice to be to find new placement for Aaron Z. Howard. If you have any questions please feel free to call or email. Thanks you for your help."*

The undersigned has been unable to interview the child, Aaron due to his altered mental status reported on May 13, 2023. The child is currently hospitalized at LLBMC.

The children, Paris and Miracle were initially not referred for forensic interviews. After reviewing prior interviews with CFS staff and completing an additional interview with the children, Paris and Miracle, the Department determined that it was appropriate for all three (3) children to complete a forensic interview. CAC forensic interviews for the children, Aaron, Miracle and Paris were rescheduled for June 15, 2023.

On May 10, 2023, SSP Stone made contact with the child, Ammarie and father, Anthony Hunter to assess the safety of the child in the father's care. SSP Stone asked the Hunter father about the discipline the mother uses with the children, Aaron, Paris, and Miracle. The father stated he was not aware and only saw the children at family outings. SSP Stone inquired with the child, Amarrie about her experience living with the mother. SSP Stone noted the child Amarrie was "rather vague with her accounts of living at her mother's house". The child reported that everyone ate dinner together and all the children ate the same food.

9

Amarrie Le'shai Hunter, et al                                            0000296897

Regarding discipline, the child Amarrie stated the mother "just took away tablets or TV as discipline". SSP Stone specifically inquired if the mother made the younger children stand in the corner or up against the wall, and the child, Amarrie confirmed that the mother made the younger children stand in the corner for "very short period of time". The child, Amarrie denied any physical discipline of any of the children while she was at home with the mother.

The undersigned was unable to assess the Hunter father and his home due to scheduling conflicts. On May 13, 2023, the undersigned spoke to the father, Anthony Hunter via telephone to schedule a J/D interview. The father stated he was not available until 05/15/2023 to meet with the undersigned. An appointment was scheduled for 05/15/2023 at the father's residence. On May 15, 2023, the undersigned called the father to inform the father of the undersigned's late arrival due to traffic. The father then sent a text message requesting the interview be rescheduled for 05/16/2023. The undersigned asked the father for availability on 05/17/2023 to reschedule the interview. The father provided availability and an interview for the child, Amarrie and the father was rescheduled for 05/22/2023.

On May 13, 2023, the undersigned met with the children, Paris and Miracle at their placements to discuss the allegations. The child Miracle asked to be interviewed first and the child Paris went to play with toys nearby. The undersigned explained the reason for the visit, and asked the child Miracle specific questions to determine if the child understood the difference between the truth and a lie. The child, Miracle stated "I don't know" and informed the undersigned that her brother Aaron was "dead". When the undersigned clarified that the sibling was not deceased and was in a foster home, Miracle smiled in response. The undersigned asked the child who lived at home. The child, Miracle listed her two (2) siblings and "auntie". When the undersigned asked the child simple questions regarding the home environment, Miracle became distracted and asked the undersigned if she was going to remain in the foster home. When asked why, Miracle stated "auntie is mean". The

Amarrie Le'shai Hunter, et al                                                0000296897

undersigned asked the child to elaborate and the child stated "I don't know". D

When asked about discipline at home, Miracle pointed to the corner. When asked if anything else happened for discipline, Miracle shook her head no in response. The undersigned asked the child, Miracle about any injuries to the child or her siblings. Miracle stated "aunty kicked Aaron and slapped him". The undersigned asked the child to show the undersigned what this looked like and the child smiled in response. The sibling Paris intervened and stated "she said don't lie, and that's a lie Miracle". The undersigned asked the child Miracle if she was telling a lie, and Miracle laughed in response and stated "no". The child Miracle stated "her be mean to us" and clarified "her" is "auntie" or the mother. When asked if anyone else in the home was "kicked" the children both said "no". Paris spontaneously stated a lie was "when it didn't happen". The child Miracle made a statement in response that was unintelligible due to an apparent speech impairment. The child stated she wanted to play with her toys. The undersigned asked the child, Miracle if the undersigned could ask more questions and the child shook her head no.

The undersigned spoke to the child, Paris. The undersigned explained the reason for the visit and the child promised to only tell the truth. The undersigned asked Paris who lived at home, and the child listed her siblings and "auntie". The undersigned asked the child why she was in foster care, and the child stated "I don't know". The child Paris asked where her sibling Aaron was and stated that she kicked her sibling Aaron. The undersigned explained that he was in a foster home. Paris stated that she liked her foster home. She denied any concerns in the foster home and reiterated that "aunty was mean". When asked to elaborate, the child Paris reported that she was sent to the corner. The undersigned asked the child if anyone was injured in the home with "auntie" and the child, Paris stated "no". The child Paris attempted to unlock the undersigned's phone that was sitting nearby and would not respond to further questions about the home. The child Miracle then grabbed the

11

Amarrie Le'shai Hunter, et al                                    0000296897

undersigned's personal phone and both children refused to put the phones down to continue the interview.

On May 15, 2023, the undersigned met with the mother, Latesha Howard, at the Victorville CFS office to discuss the allegations and current investigation. Mother stated the allegations are not true and Amarrie's father is unable to take care of her as everything she needed up until the removal was provided by the mother. She reported that after placement of the children in her home, she completed courses to learn to address autism and completed foster care related trainings for children with behaviors. Mother stated she would email the certificates to the undersigned. Mother stated she took the classes on her own as she did not receive assistance from the Department or the school district when the behaviors began to emerge.

The mother showed the undersigned approximately six (6) photographs dated March 24, 2023 of the child, Aaron's head that appear to show that the back of the child's head is not symmetrical. Mother stated the child has always had a "hook head". Mother stated regarding the scar in the back of Aaron's head, it occurred during an incident when the child, Aaron "charged towards Amarrie" in their bedroom and Amarrie moved out of the way and Aaron hit his head on the bed. Mother stated Aaron went to school and the scar was visible to staff and "told them exactly what happened" and a CFS investigation was started that was determined unfounded for abuse. Mother reported the child, Miracle has cerebral palsy and often falls at school and when asked how the injuries were caused, Miracle's statements result in a CFS investigation. Regarding the concerns related to Miracle's toenail, the mother stated Miracle pulled off her own toenail.

Mother stated she did not feel comfortable speaking with SSP Stone as he told the child Aaron during an interview in the home in or around March 2023, that it was "ok for the aide to step on Aaron's ankle" to gain control of the child for his safety. Mother stated

12

Jurisdiction/Disposition
Report
05/22/2023

Amarrie Le'shai Hunter, et al                                                    0000296897

when SSP Stone would call her before the removal he would threaten "I'm going to get the kids and take your daughter" and she felt SSP Stone was antagonizing her so she blocked his number.

Mother denied refusing to consent to a CAC medical exam. Mother stated SSP Stone initially asked her to comply with a CAC medical exam and when she stated her schedule would not allow her to take the children, SSP Stone stated he would arrange so that he could take the children. Mother reported that when she told SSP Stone her schedule was busy for the CAC appointments, she believed that statement influenced SSP Stone's determination that the children were not safe in her care.

Regarding the children playing together, mother stated she believes the child, Aaron's statement was taken out of context. Mother stated the children were sent to the corner as punishment, and when she came out of her bedroom to get them out of the corner, she observed Aaron and Paris playing together in the hallway. The mother reported that she verbally reprimanded the children not to play together while they were in the corner for punishment. She reported that the children often play together and even share a playroom.

Mother stated she "sat Aaron down and told him that there were consequences when he misbehaves at school". She stated "I talk to them everyday" to check in regarding their behavior to see if their medication is working. Mother reported a concern that the child, Paris believes the mother "likes hearing an exciting story about misbehaving at school" and stated the children are easily manipulated.

Mother reported for discipline of the children, she confiscates tablets, take the plug from the bedroom television, and game systems. Mother reported that the children were disciplined when they misbehaved or used their devices "in ways they are not supposed to" use them. The mother stated the children do not get in trouble daily. Mother showed the undersigned photographs of a recent family vacation dated March 23, 2023. She reported

13

Jurisdiction/Disposition
Report
05/22/2023

Amarrie Le'shai Hunter, et al                                                    0000296897

that she takes the children on a vacation every year. Mother stated Aaron has run away approximately two (2) times and she filed a missing person's report with law enforcement. Mother was asked about the occasions that the child, Aaron ran away. Mother reported that during the trip to Universal Studios Aaron was "running all over the park and got on every single ride with my daughter". At the end of the day, Aaron ran away when the family was in the front of the park and going to the bathroom, Aaron reported that he went to the bathroom on himself instead of waiting for the bathroom so mother stated "you're not getting McDonalds like everybody else" and Aaron ran away.

Regarding feeding the children, the mother stated the children, Aaron, Paris and Miracle overeat and do not understand when they are full until they vomit. She stated the sister-in-law Leslie Crosby observed the behaviors when they were at her home. Mother consented for the undersigned to speak to Ms. Crosby as a collateral. Mother reported there was always food in her home, and she often orders groceries for the children online from Walmart. Mother showed the undersigned her online Walmart account showing weekly orders for snack foods that she reported were for the children. Mother provided the attached photographs of Walmart food orders prior to the children's removal, consisting of eight (8) pages that are attached herein. The mother additionally provided four (4) photographs of her storage area showing snacks and other food items purchased for the children. The photographs are attached herein.

Mother reported the children have significant behaviors and the school district called her on multiple occasions to pick up the child, Aaron when the school did not want to manage his behaviors. Mother stated she was previously unaware that the school was violating the child's rights by calling the mother to pick him up early due to behaviors. Mother stated Aaron and Paris were discharged from Kids N Care due to their uncontrollable behaviors. She reported that the children went through approximately eight (8) daycares as

14

Amarrie Le'shai Hunter, et al                                                    0000296897

they do not like to sit, and when challenged academically they exhibit behaviors. The mother provided two (2) letters from prior day care providers dated April 15, 2019, and September 10, 2019, detailing concerning behaviors and a discharge from care, that are attached and incorporated herein. The mother provided copies of training certificates to parent children with behaviors and/or autism. The certificates received prior to the children's adoption, consisting of twenty (20) pages are attached herein.

On May 16, 2023, the undersigned met with the mother at her home. The mother allowed the undersigned to view the homes contents. The home is clean and organized and the mother has multiple dedicated recreation areas for the children, including a theatre room, detached playroom, gated pool, and playground. The mother showed the undersigned the children's bedrooms, including a built-in cubby area with potty supplies such as pull-up diapers and bed pads. Photographs of the children's cubby areas showing provisions, consisting of three (3) pages are attached. The mother signed a consent to release protected information to allow the Department to request medical records including but not limited to psychiatric care, ABA services rendered, and routine medical treatment. Additionally, the mother signed a consent to allow the Department to request information related to civil litigation on behalf of the children, Aaron, Paris, and Miracle regarding discrimination and civil rights violations alleged by the school district. The mother reported that the litigation for the child, Miracle, has been settled and a settlement has been proposed for one of the other children. The undersigned submitted a request for records and services rendered to the service providers identified by the mother and Regional Center.

On May 16, 2023, the undersigned spoke to the previous childcare provider and spouse to the maternal uncle, Ms. Crosby. The undersigned asked Ms. Crosby to describe the extent to which she provided care for the children, and the duration. Ms. Crosby stated that she provided care for the children from December 2022 until the removal. She reported

15

Amarrie Le'shai Hunter, et al                                              0000296897

the children were at her home the day they were removed. Ms. Crosby denied that anyone in the Department had previously contacted her regarding the children. Ms. Crosby stated she would watch the children for extended period including overnight, and for several days when the mother was out of town. Ms. Crosby reported that the children last stayed overnight at her home on the dates 04/13/2023 – 04/17/2023. Ms. Crosby was asked about the children's behaviors, she stated they are significant, and she has experience with behavioral issues due to her professional experience. She reported that the child Miracle is easily influenced by the siblings' behaviors. Ms. Crosby stated the children fuss and argue amongst each other, and that the child, Aaron is triggered by "anything". She stated "while they were here I told Aaron no water in the house, and when he proceeded to have water in the house, she told him to sit on the couch as punishment and he began to "scream at the top of his lungs and bang his head".

When asked about any concerns of abuse or neglect to the children, Ms. Crosby denied any concerns. She stated the child Aaron told her that he "talked to someone at school and told them his mother beat him with a belt and busted his head with her knuckles". Ms. Crosby reported that she did not see any injury on the child and when she pointed this out to the child he stated, "well she hit me with the door". She reported that the child insisted that he wanted to "go to another house". Ms. Crosby reported that the child, Aaron will accuse her of not feeding him if he eats his lunch before taking his nap. She stated "they will eat until they get sick" unless monitored. Ms. Crosby denied observing any suspicious bruising or marks on the children during their time at her home.

The undersigned reviewed the child welfare history for the family that rendered the following history below, regarding investigations for physical abuse or neglect to the children by the adoptive mother. The children refer to the adoptive mother as "auntie". The

16

Amarrie Le'shai Hunter, et al                                          0000296897

allegations were determined unfounded or inconclusive due to the children's inconsistent statements and lack of safety threats present or evidence of abuse to the children.

On December 17, 2019, the Department received a referral alleging General Neglect to the child, Aaron by the mother. It was reported that the mother refused to pick the child up from school when he was hallucinating. During the investigation, the mother denied refusing to pick up the child at school and reported due to her distance from the school she directed the school to call the child's daycare and the school did not. The school confirmed the mother picked up the child before school was dismissed. A concern was noted that the mother was taking the children off their medication against a doctor's order and no JV-220 was on file authorizing medication. The child Aaron was assessed and diagnosed with autism spectrum disorder. The allegations were determined unfounded.

On the dates of 02/19/2020 and 02/21/2020, referrals were received alleging Physical Abuse to the child, Aaron by the mother. It was reported the child was observed to have a "gash above his eye" and a "small burn near his eyebrow and hairline". The child reported his "big sister threw him on the bed" and that he "feel and hit his head on a rock". A concern was noted that the mother took the child off his ADHD medication around December 2019 and refused to sign the child's IEP as the school denied the child had autism and reported the mother was "pressuring them to say he was autistic". The child Aaron disclosed that the mother tells him to "be bad" at school and threatens to hit him with a belt if he does not.

The child, Aaron further reported he was made to lay down on a bed and that the mother would "whip me with a belt". It was reported that the child was observed to have more frequent injuries when concerns were reported about the home. The child, Aaron was interviewed at school and denied the aunt told him to misbehave at school or he would be hit and denied hitting his head on a rock. The child Aaron disclosed that the aunt hits the child

17

Jurisdiction/Disposition
Report
05/22/2023

Amarrie Le'shai Hunter, et al                                              0000296897

Miracle on her butt, making her cry. The mother was interviewed and reported that since she

began to advocate for the child Aaron at school, CFS has had frequent involvement with the

family. The child, Paris was interviewed and reported for discipline the children are sent to

their room. There was no evidence of physical abuse to the children by the mother. The

mother appeared to be a strong advocate for the children and had Wraparound team in the

home to assess the child, Aaron for services due to his autism diagnoses. The in-home

service providers denied any concerns for the children. The allegations were determined

unfounded.

On the dates of 02/17/2021 and 04/02/2021, the Department received two (2)

referrals alleging Physical Abuse to the children by the mother. It was reported the mother

was not allowing the children to visit with their grandmother and were observed to have "belt-

like" welts on their skin and disclosed the mother and her significant other hit them. During

this time, the Department received multiple referrals of neglect to the children as it was that

the mother disagreed with school policies regarding isolating the children when they were ill,

food choices provided by the school, and threatened to disenroll the children when changes

were not made. It was further reported that the mother was using a "straight jacket" on the

child, Aaron. The children were receiving daily in home services at the time the referrals were

received, and the providers denied concerns of abuse or neglect in the home. The allegations

were determined unfounded.

On June 25, 2021, two (2) referrals were received alleging Physical Abuse to

the child Aaron by the mother. The child was observed to have a bruise on his back, when

asked what happened the child, Aaron stated, "auntie kicked me there" and further reported

"she kicks me when I'm being bad". On another occasion, the child jumped onto a one of the

care providers back and stated "look what you did to me" and lifted his shirt to show an

abrasion on his left rib cage. The child was asked what happened and stated his aunt kicked

18

Amarrie Le'shai Hunter, et al                                            0000296897

him. It was reported that the child had a history of lying and was diagnosed with autism. On October 21, 2021, a third referral was received alleging General Neglect when it was reported the child Aaron was not attending school online after the mother requested the school provide a one-on-one aide to help the child focus due to his special needs. The mother reported the school district was unable to provide an aide due to COVID-19 restrictions and the mother filed a lawsuit against the district. During the investigation, school staff, the one-on-one aide, and in home service providers denied any evidence of abuse or neglect to the child.

The child, Aaron was interviewed and appeared to have no concept of what it meant to tell the truth, or what it meant to be safe. Aaron disclosed that the mother or his "Gigi" (grandmother) will "whoop" him with a "belt" or a "sandal" when he is in trouble, and was hit on his butt, legs, or arms. Aaron could not say what happens to his sisters if they are in trouble. Aaron could not tell/relay the difference between a mark/scar or bruise. Aaron disclosed being "kicked" in his stomach by his auntie. The child, Paris was interviewed and appeared to have no concept of safety or the difference between a truth and a lie. Paris stated that when she or her brother or sisters are in trouble they have to go in timeout in the corner. Paris denied anyone was hit.

The child, Ammarrie was interviewed and stated that said that when she is in trouble that her mother will take her phone away. Anmarrie said when her little cousins are in trouble that her mother will not let them watch TV, no toys or no games. Anmarrie denied that the children in the house are ever hit with objects. Anmarrie said that if Aaron said that "he lies a lot because he wants to go and live with his other grandmother. At the most they have to stand in a corner for timeout." The mother was interviewed and reported that the three (3) children were autistic and had severe self-harming that included pulling out their hair and braids, as well as picking out their toenails until their feet bled.

19

Amarrie Le'shai Hunter, et al                                                    0000296897

During the investigation, the mother denied hitting the child, Aaron with a belt and said she had to restrain him from self-harm using a "leg locking aspect to it that he may misconstrue as a kicking motion". The classroom aide for the child Miracle was interviewed and reported that Miracle "self-harms quite a bit and will bite and scratch herself til she bleeds". The aid further reported observing Miracle to pull whole dreads/braids out of her causing the scalp to bleed. The aide denied any concerns of abuse to the child Miracle. The allegations of Physical Abuse were determined unfounded as the children had the propensity to engage in self-harm requiring restraint and it did not appear that the mother caused any harm to Aaron or any of the other children consistent with a violation of WIC 300.

During the months of March 2022 – March 2023, the Department received approximately twelve (12) referrals alleging Physical Abuse and Neglect to the children by the mother. Physical Abuse concerns were determined inconclusive and/or unfounded as the child, Ammarie disclosed that the children "hit themselves" and during multiple interviews with the children, at times they reported abuse by the mother and at times reported the various marks/injuries were caused by running and falling.

On March 17, 2022, a referral was received when the child Paris was observed to have a "huge bump" on the side of her forehead and the child disclosed her "auntie" hit her because she could not find her clothes. The child was taken to the nurse and when the nurse asked what happened, the child told the nurse that she fell. The child did not wear socks and reported that the mother did not allow her to wear socks to school.

On July 01, 2022, a referral was received alleging Physical Abuse to the children Aaron and Miracle by the mother. It was reported that the child Aaron disclosed "sometimes she (Miracle) gets whoopings if she takes food and sometimes I get whoopings too if I take food", The child stated if he missed the school bus the mother would made him sit in the corner until lunch time.

Amarrie Le'shai Hunter, et al                                                                    0000296897

On July 06, 2022, a referral was received alleging Physical Abuse to the child Miracle by the mother. The child was observed to have a bruise on the left side of her frace. When asked she stated "my aunt hit me because I didn't want to go to bed". It was reported that when the child would get upset "she will engage in self-harm" will pull her hair and hit herself.

On October 17, 2022, a referral was received alleging Physical Abuse to the child Miracle by the mother. The child was observed to have a "scratch across the back" and when asked what happened, the child stated that she scratched herself. The reporting party stated the scratch was "too long for her to do it to herself". The reporting party questioned the child a second time, and the child stated "my aunt kicked me because I crapped myself". The scratch was described as "more like a slash than a scratch".

On October 18, 2022, two additional referrals were received alleging Physical Abuse and General Neglect, to the children by the mother. It was reported that the child Paris reports daily that she is afraid to go home. The child stated her auntie "hits her all day long". No bruises or marks were observed on the child. The child Paris disclosed that her aunt "makes her stand in the corner for a long time". The child took off her shoes, threw herself, and started hitting her aide. The aide reportedly called for the mother to help, and the mother did not want the school staff to touch the child.

On November 07, 2022, a referral was received alleging Physical Abuse to the child, Miracle by the mother. The child was observed to have a bruise on the top of her left hand. When asked what happened, the child "demonstrated someone squeezing her hand". The child then stated that she was "messing around during timeout" and her aunt squeezed her hand. The child was observed to have a mark to the right side of her forehead, and when asked what happened she stated her aunt hit her.

21

Jurisdiction/Disposition
Report
05/22/2023

Amarrie Le'shai Hunter, et al                                         0000296897

On March 07, 2023, a referral was received alleging Sexual Abuse and General Neglect to the child Miracle. The child Miracle went to the bathroom and was observed to have blood on the toilet paper. When asked "if anyone was poking" the child stated her "auntie poked her with her dick". She disclosed that her brother Aaron "also pokes her with his dick". Concerns were reported that the child was not dressed appropriately for cold weather and not being fed adequately.

On March 14, 2023, a referral was received alleging Physical Abuse to the child, Miracle by the mother. The child was observed to have a "cut/bruise on her upper lip" and when she took off her shoe the toenail was "half on half off looks like an infection". It was reported that the child's shoes and leg braces were too small.

On April 04, 2023, a referral was received alleging Neglect to the children by the mother. It was reported that the mother was suing the district for "everything and coached the children to misbehave". It was also stated by the reporting party that previous reports of abuse were reported to the Department.

On April 19, 2023, a referral was received alleging Physical Abuse and General Neglect to the children by the mother. It was reported that the child Aaron disclosed that his mother hit him because he wanted to play with his siter but was told to stand in the corner. The child then stated the mother hit him after he ran away from the house because he was hungry. The child was observed to have a "knot on the back of his head the size of a golf ball". The child reported that the mother hit him and his head hurts when he turns his head. During the investigations, the children were assessed by the Department's PHN. No visible bruises, marks, or injuries were noted. The children were recommended to complete CAC evaluations.

**RECOMMENDATIONS**

**It is respectfully requested that the Court grant a 45-day continuance to allow time for the children, Aaron Zyair Howard, Paris Amarii Howard, and Miracle**

22

Amarrie Le'shai Hunter, et al                                                    0000296897

**London Howard to complete forensic interviews with the CAC and for the Department
to receive requested law enforcement reports, school and medical records.**

## DISPOSITION

## ASSESSMENT/EVALUATION

The mother appears hesitant when discussing reunifying with the child, Aaron.
When advised of the child's possible placement options should reunification fail, the mother
became emotional and expressed a desire to reunify with all the children. The mother appears
to be a strong advocate for the children's education and behavioral health needs. The mother
provided documentation that is concerning for multiple reports of abuse to the children that
followed civil litigations with the school district. The children, Aaron Zyair Howard, Paris Amarii
Howard, and Miracle London Howard are pending a CAC interview regarding the allegations
of abuse. The Hunter father's background is pending further assessment regarding the
appropriateness of placement of the child, Amarrie Le'shai Hunter, in his home. At the time of
the Detention Hearing, the Risk Assessment for the family was determined "high" and
recommended to promote to dependency case due to numerous prior investigations for
physical abuse and neglect, and current allegations of neglect.

## PATERNITY/LEGAL RELATIONSHIPS

The mother reported that Anthony Hunter is the biological father to the child,
Amarrie Le'shai Hunter. The Hunter father has made it known to the Department that he holds
the child as his own and the child has lived with him.

The adoption of the children, Aaron Zyair Howard, Paris Amarii Howard, and
Miracle London Howard was a single-parent adoption by the mother, Latesha Howard.

The birth certificates for the children have been requested.

It is recommended that the Court find, Anthony Hunter to be the presumed father
to the child, Amarrie Le'shai Hunter.

23

Amarrie Le'shai Hunter, et al                                              0000296897

## SOCIAL STUDY/FAMILY ASSESSMENT

### A.    Problems Requiring Intervention and Possible Causes:

The undersigned has been unable to complete a social-study family assessment with the Hunter father and child, Amarrie due to scheduling conflicts.

On May 15, 2023, the undersigned met with the mother, Latesha Howard. The mother was born in Bellflower California. Her primary language is English and she identifies as African American. As a child she lived with her mother and thirteen (13) siblings. Mother reported she would describe her childhood as very busy and stated "we couldn't have everything we wanted but we had everything we needed" and denied any concerns. The mother completed an associate degree in early childhood development in or around 2005. She is self employed as a real estate investor earning approximately $17000 per month. She was diagnosed with tendonitis in 2016 receives epidural injections every three (3) months, beginning stages or arthritis in her back, and a dislocated left shoulder, had surgery in 2015 and 2017 and has an upcoming surgery as her injury did not completely heal. The mother denied any mental health diagnosis or prior psychiatric hospitalizations.

### Child Welfare History

The following child welfare history concerning inconclusive allegations for the Hunter father were located:

On March 20, 2013, a referral was received in Los Angeles County alleging General Neglect to the half-sibling by the father, Anthony Hunter. It was reported the child was "always in a soppy diaper" and was not fed properly. The allegation was determined inconclusive as there was insufficient evidence of abuse or neglect to the child.

### Criminal History

The undersigned completed a Department of Justice (DOJ) Inquiry for the parents that rendered the following history:

24

Amarrie Le'shai Hunter, et al                                                    0000296897

**Regarding the mother, Latesha Howard:**

12/04/2004: Mother arrested for charge PC484(A)-Theft; Court Disposition on 04/11/2005, convicted of misdemeanor PC602(K)-Trespass: Injure Property, sentenced to six (6) months probation, one (1) day jail, restitution; Disposition on 03/28/2007: Conviction set aside and dismissed per PC 1203.4.

07/06/2007: Charged with PC484G(A)-Theft by Forged/Invalid Access Card, PC459- Burglary, PC484E(A)-Sell/Etc Lost/Etc Access Card, PC484F(A)-Force Access Card to Defraud; Court Disposition on 11/15/2007, convicted of felony charge PC459-Burglary-Second Degree, all other charges dismissed/furtherance of justice, sentenced to three (3) years probation, work in lieu of jail. Disposition on 08/23/2010: Reduced to misdemeanor and dismissed per PC 1203.4.

10/23/2015: Charged with PC148(A)(1)-Obstruct/Etc Public Officer/Etc; Court Disposition on 08/29/2016: charged dismissed furtherance of justice.

**Regarding the father, Anthony Lamarr Hunter:**

04/29/2018: Arrested for VC23152(A)-DUI Alcohol/Drugs; Court Disposition on 11/06/2018: convicted of charge VC23152(B)-DUI Alcohol/0.08 Percent, sentenced to 36 months probation, fine and restitution.

**B.    Reasonable Efforts:**

The family was previously known to the Department for prior investigation of abuse and neglect. The mother previously declined preventative services as the children were receiving in home and in school services to address behavioral concerns. After completing the SDM needs assessment for the mother, she was referred to parenting and counseling.

**DEVELOPMENT OF SAFETY NETWORK**

25

Jurisdiction/Disposition
Report
05/22/2023

Amarrie Le'shai Hunter, et al                                    0000296897

A Child and Family Team Meeting is being arranged for the family. The mother identified the maternal aunts and her grandfather as support.

**CHILDREN**

**Regarding:** Amarrie

    **A.**    **Medical:**

Health and Education Passport (HEP) consisting of nine (9) pages is attached and incorporated herein. Amarrie has no known serious medical conditions.

    **B.**    **Developmental:**

Amarrie is age fourteen (14) and no concerns have been reported in this area. She is being referred for a Healthy Homes assessment. See attached HEP.

    **C.**    **Educational:**

Amarrie is enrolled in 9th grade at Inglewood High School. The parents hold education rights. The child does not have an Individualized Educational Plan. See attached HEP.

    **D.**    **Mental and Emotional Status:**

No concerns have been reported in this area. The child is pending a Healthy Homes assessment to determine any needs.

**Regarding:** Aaron

    **A.**    **Medical:**

HEP consisting of nine (9) pages is attached and incorporated herein. Aaron is prescribed psychotropic medication to address anxiety, was diagnosed with PICA, and was previously diagnosed with PTSD in 2017.

    **B.**    **Developmental:**

Aaron is diagnosed with autism, was diagnosed with a speech delay and receives ABA therapy. See attached HEP.

26

Amarrie Le'shai Hunter, et al                                              0000296897

**C.    Educational:**

Aaron attends a county school through Snowline School District. Mother reported that Aaron has an aide at school that often changes due to his behaviors. Aaron has an IEP. The most recent IEP dated 08/06/2021, consisting of 29 pages is attached herein. See attached HEP.

**D.    Mental and Emotional Status:**

The Department has been unable to stabilize the child's extreme behaviors since placement. The child is currently hospitalized and placed on a 5150 hold, has a history of assaulting staff and caregivers, and threatening to harm himself and other dependent children in placement.

**Regarding: Paris**

**A.    Medical:**

HEP consisting of nine (9) pages is attached and incorporated herein. Paris was previously diagnosed with PICA. She has no known serious medical conditions.

**B.    Developmental:**

Paris is diagnosed with autism and has a developmental and intellectual delay. She is pending an assessment for a processing disorder. She was previously receiving behavioral health services. See attached HEP.

**C.    Educational:**

Paris attends Snowline District receives special education services and has an IEP. The undersigned requested the most recent IEP and school records for the child. See attached HEP.

**D.    Mental and Emotional Status:**

While awaiting placement, the child displayed extreme behaviors that included striking staff, using foul language with staff, and running out of the CFS building and down the

27

Amarrie Le'shai Hunter, et al                                                    0000296897

street. The caregiver denied any major behaviors for the child. She is pending a Healthy Homes assessment and is pending a referral back to previous in-home behavioral health services.

**Regarding:** Miracle

    **A.**    **Medical:**

        HEP consisting of nine (9) pages is attached and incorporated herein. Miracle has cerebral palsy, wears ankle braces to support ambulation and has incontinence issues. On April 28, 2023, the Department's PHN assessed the child, Miracle's psychotropic medication (Risperidone). PHN findings for the child, Miracle indicate the child was not experiencing adverse effects from the medication, had no signs of auditory or visual hallucinations, or thoughts to harm herself or others.

    **B.**    **Developmental:**

        Miracle is diagnosed with autism and has a developmental and intellectual delay. She was previously receiving behavioral health services. See attached HEP.

    **C.**    **Educational:**

        Miracle attends Snowline District receives special education services and has an IEP. The undersigned requested the most recent IEP and school records for the child. See attached HEP.

    **D.**    **Mental and Emotional Status:**

        While awaiting placement, the child displayed extreme behaviors that included striking staff and using foul language with staff. The caregiver denied any major behaviors for the child. She is pending a Healthy Homes assessment and is pending a referral back to previous in home behavioral health services.

**CONCURRENT PLANNING**

    **1)**    **Identify the Concurrent Plan:**

28

Amarrie Le'shai Hunter, et al                                                    0000296897

The concurrent plan for the Howard children is legal guardianship.

**2)    Selection of Concurrent Plan Home:**

Search for a concurrent plan home is pending.

**3)    Sibling Issues:**

The children are placed in separate homes due to extreme behaviors displayed when in the same residence.

**4)    Implementation of the Plan:**

In order to accomplish the permanent plan, the implementation steps as described in the CASE PLAN, must be addressed. Implementation steps include continuing to search for concurrent home, placing the children with approved relatives, providing therapeutic services for the children, providing the parent with a relinquishment packet.

**5)    Inform Others of Plan/Caregiver's Statement:**

On May 15, 2023, the undersigned explained the concurrent plan and process with the mother, should reunification fail. At this time the mother has not identified a concurrent plan. The children are not placed in concurrent homes.

**CONSIDERATION OF PLACEMENT WITH NON-CUSTODIAL PARENT**

On May 10, 2023, SSP Stone assessed the Hunter father's home. It was noted the is overall clean, however the kitchen was cluttered. The father reported that the child resides in his home primarily and is engaged in sports. The child's placement with the father was observed to be appropriate pending further assessment.

On May 15, 2023, the undersigned spoke to the mother regarding the child's placement with her father. She stated Amarrie was sent to the father's home in or around October 2022 due to her behaviors in school and at home. Mother stated she wanted Amarrie to go live with her father so that he could see the behaviors Amarrie was having and provide all financial support for the child, but the mother was often purchasing necessities for Amarrie

29

Amarrie Le'shai Hunter, et al                                                                0000296897

as the father was unable to afford her care since he has eleven (11) other children. Mother stated she ordered clothing online for Amarrie that she sent to the father's home via a maternal uncle as she does not communicate with the Hunter father. Mother is concerned that Amarrie and the stepmother do not get along, and the father is not financially able to take care of Amarrie without her assistance. Mother did not disclose any safety concerns regarding the child's placement with her father.

## CONSIDERATION OF RELATIVE PLACEMENTS

On May 15, 2023, the undersigned asked the mother about potential relative placements. The mother stated "I talked to many family members and they don't want the behaviors to rub off on their kids".

On May 16, 2023, the undersigned spoke to the relative Ms. Crosby regarding placement. Ms. Crosby stated the mother previously asked her to consider placement and Ms. Crosby reported that due to financial difficulties she is unable to accept placement of the children.

There are no approved relatives to consider for placement of the children.

## OUT-OF-HOME PLACEMENT

**A.    Current Placement:**

The children, Paris and Miracle are currently placed in the small family home, Tender and Kind Hearted.

The child, Aaron is currently hospitalized at LLBMC.

**B.    Appropriateness of Placing Siblings Together:**

Due to the children's significant behaviors, the child, Aaron was not able to be placed with the siblings. The child, Aaron influences the siblings to physically assault caregivers and staff when in the same room. Separate placements are necessary to ensure the safety of the children.

30

Amarrie Le'shai Hunter, et al                                               0000296897

**C.    Continued Necessity for and Appropriateness of Placement:**

Due to the nature of the allegations, the placements remain necessary, and the children's basic needs are being met in placement.

**D.    Appropriateness of Out-of-County or Out-of-State Placement:**

The children are placed in San Bernardino County.

**E.    ILP Issues:**

The children are too young for ILP services.

**VISITATION**

**A.    Parents:**

Visitation for the mother and children is recommended one (1) time per week for two (2) hours, supervised in the CFS office for the Howard children.

During the reporting period, the children Paris and Miracle refused visitation with the mother. The mother reported she attended a Mother's Day visit with the child, Amarrie.

31

Amarrie Le'shai Hunter, et al                                        0000296897

## RECOMMENDATIONS

    It is respectfully requested that the Court grant a 45-day continuance to allow time for the children, Aaron Zyair Howard, Paris Amarii Howard, and Miracle London Howard to complete forensic interviews with the CAC and for the Department to receive requested law enforcement reports, school and medical records.

32

1 | Amarrie Le'shai Hunter, et al                                                    0000296897

2 | **Respectfully Submitted,**

3

4 | Jeany Zepeda, Director of
Children and Family Services/
5 | Human Services

6 | **By**

7

8 |  *Tiyana Benitez*                                                    05/17/2023
   | **Tiyana Benitez, SSP-JD, V8804**                                   **Date**
9 | **(760) 243-6678**

10 |  *Wesly William*                                                    05/18/2023
    | **Wesley Williams, SSSP-JD**                                       **Date**
11 | **(760) 243-6663**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                                              33

28

CFS

**Human Services System/**
Children and Family Services (CFS)
NDR-Victorville
15020 Palmdale Road
Victorville, California 92392
Tiyana Benitez, SSP
(760) 243-6678
No. V8804
DSS No. 3495802

2023 JUL 14  PM 4: 47

COUNTY OF SAN BERNARDINO
CALIFORNIA

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
JUVENILE COURT

JUL 1 7 2023

BY _____
ROSA CERVANTES, DEPUTY

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN BERNARDINO
860 E. Gilbert Street, San Bernardino, California 92415-0955

## FIRST ADDENDUM TO JURISDICTIONAL/DISPOSITIONAL REPORT

| Hearing Date | Hearing Time | Dept./Room | Hearing Type/Subtype |
|---|---|---|---|
| 07/17/2023 | 08:30 a.m. | 06 | Jurisdiction/Disposition/Continued |

### IN THE MATTER OF

| Name | Date of Birth | Age | Sex | Court Number |
|---|---|---|---|---|
| Amarrie Le'shai Hunter | 08/18/2008 | 14 Yrs. | F | 0000296897 |
| Aaron Zyair Howard | 01/19/2014 | 9 Yrs. | M | 0000296896 |
| Paris Amarii Howard | 08/17/2015 | 7 Yrs. | F | 0000296895 |
| Miracle London Howard | 02/05/2017 | 6 Yrs. | F | 0000296894 |

### SUMMARY RECOMMENDATIONS

A.    **For Jurisdiction:**

It is respectfully requested that the Court grant a 30-day continuance to allow time for the child, Aaron Zyair Howard to complete a forensic interview with the Children's Assessment Center (CAC) and for the Department to receive requested law enforcement reports and medical records.

B.    **For Disposition:**

Confidential in accordance with Penal
Code Section 11167.5 and/or WIC
Sections 827 and 10850.

First Addendum to
Jurisdictional/Dispositional
Report
07/17/2023

1

SCANNED

Amarrie Le'shai Hunter, et al                                                          0000296897

It is respectfully requested that the Court grant a 30-day continuance to allow time for the child, Aaron Zyair Howard to complete a forensic interview with the Children's Assessment Center (CAC) and for the Department to receive requested law enforcement reports and medical records.

## PARENTS'/CHILDREN'S WHEREABOUTS

| Parents' Names/<br>Birth Dates | Address/<br>Phone | Relationship/<br>To Whom |
|---|---|---|
| Latesha L. Howard<br>12/17/1980 | 10420 Mesquite Street<br>Oak Hills, CA 92344<br>(760) 244-6354 | Mother/<br>Amarrie |
| | | Mother<br>(Adoptive)/<br>Aaron, Paris,<br>and Miracle |
| Anthony L. Hunter<br>05/14/1985 | 721 Larch Street, Apt. 6<br>Inglewood, CA 90301<br>(310) 921-0739 | Father<br>(Presumed)/<br>Amarrie |

## Children's Whereabouts

The child, Amarrie Le'shai Hunter is pending NREFM placement with RFA approved NREFM Ms. S. The child, Aaron Zyair Howard, is placed with RFA approved NREFM Ms. S. The children, Paris Amarii Howard, and Miracle London Howard are placed in the confidential small family home Tender and Kind Hearted. The addresses are on file with CFS.

## ATTORNEYS

| Name | Address/<br>Phone | Representing |
|---|---|---|
| CAG Child Advocacy Group | 685 Carnegie Drive, Ste. 200<br>San Bernardino, CA 92408<br>(909) 890-9977 | Amarrie<br>Hunter and<br>Aaron, Paris,<br>and Miracle<br>Howard |

First Addendum to
Jurisdictional/Dispositional
Report
07/17/2023

2

| 1 | Amarrie Le'shai Hunter, et al | | 0000296897 |
|---|---|---|---|
| 2 3 | Cesar O. Montoya | 206 W 4th Street, Ste. 437<br>Santa Ana, CA 92701<br>(714) 732-0287 | Latesha L.<br>Howard |
| 4 5 6 | John Belton | P.O. Box 1443<br>Highland, CA 92345<br>(909) 884-8549 | Anthony L.<br>Hunter |
| 7 8 | CC County Counsel | 385 N. Arrowhead Avenue<br>4th Floor<br>San Bernardino, CA 92415<br>(909) 387-5455 | Child Welfare |

**REASON FOR HEARING**

First Addendum to Jurisdictional/Dispositional Court Report by Tiyana Benitez, SSP for the Jurisdictional/Dispositional Court Hearing calendared on May 22, 2023.

**ADDITIONAL INFORMATION**

During the reporting period, the child Aaron's placement was changed three (3) times. On the dates of April 27, 2023, May 13, 2023, and the child was hospitalized at Loma Linda due to being a danger to himself and others. On June 01, 2023, the child was placed in the Preston small family home and within three (3) days was hospitalized due to being a danger to himself and others. The child was transferred to Rancho Springs Hospital for behavioral health evaluation. Loma Linda medical reports for initial hospitalizations on 04/27/2023 and 05/13/2023 consisting of thirty-seven (37) pages are attached and incorporated herein. The undersigned has requested records from the most recent hospitalization in June 2023.

On June 14, 2023, the mother had an initial visitation with the child, Aaron at the hospital. Hospital staff indicated the mother was appropriate and the child appeared happy to see the mother. On or around June 19, 2023, the child was released from Rancho Springs hospital and returned to the Preston placement. The mother and NREFM/grandmother Antonette Smith requested placement of the (3) children, Aaron,

Amarrie Le'shai Hunter, et al                                            0000296897

Miracle, and Paris. Ms. Smith indicated On June 23, 2023, Ms. Smith was approved for placement of the child, Aaron. In consultation with supervision and the treatment team at Rancho Springs Hospital, it was recommended that the Department stabilize the child, Aaron in relative placement and ensure treatment and services were in place prior to requesting placement of the siblings, Miracle and Paris in the same home. The mother and NREFM were informed of the decision during the CFTM meeting on June 14, 2023. The Department was informed by the Department of Behavioral Health that the caregiver, Ms. Smith has coordinated with the service providers to ensure the child's medication is being evaluated and services are resumed. Services are pending scheduling.

On May 22, 2023, the undersigned met with the father, Anthony Lamar Hunter Jr. at his home to discuss the allegations and current investigation. Father stated he is planning to move to Houston Spring in July 2023 and will be traveling to Oregon for a track and field event. The father was provided with an explanation of the reason for the interview, the allegations and the Court process. The Hunter father was born in Gardena California, to paternal grandparents, Anthony Lamar Hunter Sr. (deceased in 1986) and Lisa Denise Mitchell (deceased in 2010). During childhood, he lived with paternal grandmother Mariellis Hall as his mother was in prison for robbery. He would describe his childhood as "sporadic" as he lived with his grandmother twelve (12) years, a cousin for a year, and two (2) other uncles before going to live with another grandmother. His primary language is English and he identifies as African American. The father reported he married Tatiana Poke in Las Vegas, Nevada in 2021. He denied any domestic violence in previous or current relationships. The father reported he had a restraining order against his oldest child's mother in 2022 after she "beat" his child (Ayana).

Regarding paternity of the child, Amarrie. The father stated he is on the birth certificate and was present during her birth. The child was previously residing with her

First Addendum to
Jurisdictional/Dispositional
Report
07/17/2023

4

Amarrie Le'shai Hunter, et al                                                    0000296897

mother primarily. The father stated at the end of 2022, "her mom called me and said she wanted Amarrie to come down here because of something she did at school". After that time the child was residing with the father. When asked about coparenting, the father stated "not really, there's no balance in our conversations". When asked about any other children not included in this case and their whereabouts, father stated he has ten (10) children, and three (3) (Avery, Ayden, and Allysa) live with him. The other six (6) children have weekend visitation at the father's home.

The father stated he completed a communications program at RDM fiberoptics in 2016 in Carson, California. He is employed fulltime with Global Electric Local 11 Union as a journeyman and he earns approximately $4800 per month. When asked about health history, the father denied any significant medical history, mental health diagnosis, or prior psychiatric hospitalizations. The father denied any drug or alcohol use and reported he had a DUI from a birthday party for the paternal uncle, after he "had a shot and got pulled over". The father denied any other criminal history and denied any gang affiliation. The father denied any prior CFS history for concerns in his home. The father reported his support includes his spouse and great uncle Richard Hall.

The father was asked about family history and reported the paternal grandmother has a history of drug and alcohol abuse, and the paternal uncles have extensive criminal history. The father denied experiencing any physical or sexual abuse as a child. The father reported his family strengths are that he spends quality time with his children.

The undersigned the Detention Report and allegations with the father. He denied any concerns for Amarrie in the mother's home prior to CFS involvement. He stated "They had a good relationship". The father denied any concerns were previously reported by Amarrie regarding abuse in the mother's home. The father denied any relationship problems

Amarrie Le'shai Hunter, et al                                                    0000296897

with his spouse. The father denied any concerns for the other three (3) children, Miracle, Paris, and Aaron when he saw them at sports events for the child, Amarrie that the mother attended.

The undersigned reviewed the harm, danger, and safety goals with the father. The father indicated his understanding of the reasons for Department involvement but stated the child Amarrie should not be involved as she is denying any abuse in the home. Father believes the child should return to the mother's custody. Father indicated his understanding of the current court order detaining the child from the mother's custody. The undersigned advised the father of court order regarding the mother's visitation and contact being supervised. Father reported the maternal uncle Shawn is able to monitor the mother's visits. Father denied any medical concerns or history for Amarrie.

F        The undersigned reviewed the Family Strengths and Needs SDM tool with the father. The undersigned explained the various domains of the assessment, its role in Case Plan development, and the father appeared to understand the domains and purpose of the assessment. When reviewing the domains with the father he reported no concerns with any domain. He denied there are any barriers to the safety and well-being of the child when in his care. The father's home was observed to be clean although cluttered. The child Amarrie shared a bedroom with siblings, the room had two (2) sets of bunk beds, six (6) beds total. No safety concerns observed in the home. The stepmother and other siblings were not present during the visit to the home.

C        On May 22, 2023, the undersigned met with the child Amarrie alone in her shared bedroom at the father's residence. The undersigned explained the reason for the visit including the court process and concerns of the Department. Amarrie denied any academic concerns and stated she plays basketball, flag football, track and softball. She reported that she lives at home with her mother and the children, Aaron, Paris, and Miracle.

Amarrie Le'shai Hunter, et al                                                    0000296897

She stated she was residing with the father to complete the school year near his home and does not understand why she cannot return to her mother now that school is ending for the year.

The undersigned asked the child Amarrie about discipline in the mother's home. Amarrie stated, "she took my Playstation, the tv and my phone". Regarding discipline for the siblings, Amarrie stated "they get their tv taken and stand in the corner". She reported that the children would chip off the paint on the walls with their hands while they stood in the corner. She reported that the mother talked to them about the behavior "but they did not listen" and the behavior continued. Amarrie denied the child Aaron would physically assault anyone in the home. She stated "Aaron would only bite or hit his teachers". She denied there is any physical discipline in the mother's home.

The undersigned reviewed the allegations with the child, Amarrie. The undersigned showed Amarrie the photograph taken of Aaron's head. Amarrie stated "it always looked like that". When asked about the report that the mother caused an injury to the back of the child's head, Amarrie chuckled and stated "Aaron would make up stuff that never happened at school or would make up stories about things that never happened. He told people that my mom let him watch Chuckie and they weren't even allowed to watch scary movies. Y'all said that she hit them, I never see my mom hit him. She couldn't, her shoulder is hurt, and she wears a brace all the time on the opposite hand." Amarrie reported that if the child Aaron does not get his way at school, he hits or kicks people.

The undersigned asked Amarrie about the children's behaviors in the home. She reported that "it's mostly Paris hitting Miracle. Aaron would only hit them if they hit him first". Amarrie recalled observing Aaron and Paris "bang their heads on things". Amarrie reported that Paris would break things on purpose. When asked about the mother efforts to manage the behaviors, Amarrie stated "People were coming to the house to teach them, it

Amarrie Le'shai Hunter, et al                                                    0000296897

was helping a little bit. They were teaching them to write. She (mother) did a lot to help them out. Aaron told her that one (1) of the teachers locked him in a bathroom to calm him down and she sued the school district". When asked about the children's toileting needs, Amarrie stated they wore pull-ups. She stated "Aaron only says when he has to go to the bathroom sometimes. They change themselves. They know how to do it correctly, if they don't say that they have to go for a while, mom tells them to go". She denied the children ever playing with feces or smearing it on the walls. Amarrie denied any abuse occurring at the mother's home. She denied any worries for her family.

The undersigned asked Amarrie about living with her father. She stated "I wasn't, I was visiting my dad". Amarrie denied telling another social worker that she lived with her father. Amarrie stated "I was supposed to stay the whole school year. I barely see him." When asked why she completed the school year near the father's home, Amarrie stated she was in trouble at the mother's home and mother sent her there for the school year. Amarrie reported that she was in trouble for "not listening or being unappreciative for the things you have". Amarrie reported that while staying at the father's home, the mother would send her provisions. She stated "If I ask her for something, they (mother and maternal uncle) meet up and uncle Shawn brings it to my dad".

Amarrie reported that her father buys food for the house, and she will ask the mother for clothes when she needs them. When asked why she asks the mother for clothes, Amarrie stated "I always asked my mom for stuff like that". She denied any financial concerns in the father's home. Amarrie stated "I would have gone back to my mom on the 8th if this didn't happen". When asked about any domestic violence in the father's home, Amarrie denied any concerns. She stated "they go to their room" if they have a disagreement. Amarrie denied any drug or alcohol use in either home. When asked about

First Addendum to
Jurisdictional/Dispositional
Report
07/17/2023                                                                              8

Amarrie Le'shai Hunter, et al                                                    0000296897

reunification, Amarrie stated "I lived with my mom my whole life, this is the one (1) year I didn't" and stated she would not like to remain in her father's care and wants to return home.

On June 16, 2023, a referral was received alleging Emotional Abuse and General Neglect to the child, Amarrie by the stepmother Tatiana Polk, mother, Latesha Howard, and father Anthony Hunter. It was reported that the child disclosed she was being mistreated at the father's home and that food was being withheld from the child. It was further reported that the father gets drunk every weekend, mad easily, and that the father and stepmother were "saying mean things" to the child. On June 22, 2023, the undersigned spoke to the mother about the allegations. The mother reported that the father did not want the child to remain in his care as he expected the child to return to the mother's custody at the Jurisdiction Dispositional Hearing on May 22, 2023.

On June 21, 2023, the undersigned spoke to the father via telephone regarding the referral. The father was verbally informed of civil rights, reason for the investigation and confidentiality of the reporting party. He appeared to understand. The father denied the allegations. The father stated that the child Amarrie just does not like to be told to clean up after herself. The father stated he already paid for a cruise vacation with his household prior to CFS involvement that placed the child Amarrie primarily in his care. The father stated he asked Amarrie's maternal aunt if she was able to care for the child while the rest of the household was on vacation. The father stated that the uncle picked up the child and took her to the maternal aunt. The father stated he did not authorize the child to remain in the aunt's care over the summer and did not know the child would be moving from one relative's residence to another during her time away from the father. The father stated he told the maternal aunt that contact with the mother was supervised due to the court order. The father stated Amarrie's claims are affecting his other children as law enforcement came to his home to investigate the concerns, so if Amarrie is exhibiting this behavior and "making

First Addendum to
Jurisdictional/Dispositional
Report
07/17/2023

9

Amarrie Le'shai Hunter, et al                                                    0000296897

up false claims" then he does not want her to return to his home. The father was advised that his refusal to provide support of the child is considered abandonment and the father stated he understood and wats her removed from his custody. The undersigned requested the father participate in a CFTM with the child Amarrie to discuss a possible solution to the disagreement, as the child is now refusing to return to his care. The father stated he would answer his phone when called for the meeting.

The undersigned met with the child Amarrie at her grandmother/NREFM Antonette Smith's home to investigate the referral concerns. Amarrie was observed wearing clean shorts and a t-shirt. She had no visible bruising on her exposed skin. The undersigned explained the reason for the interview. Amarrie appeared to have a good understanding of truth vs. lie and right vs. wrong. Regarding the allegations, Amarrie stated the father disconnected her phone service and does not want her to return to his home. Amarrie stated she felt safe in the father's home. Amarrie reported that she fell asleep on one occasion and when she woke up the father and stepmother told her that they assumed she did not want to eat dinner because she was sleeping. Amarrie was asked about her access to food at the father's home and stated "dad makes the kids eat one at a time. If I don't hear him call I don't get to eat". She clarified that if she does not hear her father call her to eat after the half-siblings have eaten, she will ask the father if he cooked diner and the father and stepmother "will say they called me and when I didn't come out that means I didn't want to eat".

Amarrie reported that she went without food those occasions. She could not recall approximately how many times it happened, and stated there were at least two (2) times that she was not able to eat dinner or provided food. Amarrie reported that she does not want to return to the father's home as she stated "I'm not being treated like the other kids, dad only takes certain kids with him on outings". Amarrie was asked why she was not

First Addendum to
Jurisdictional/Dispositional
Report
07/17/2023                                                                        10

Amarrie Le'shai Hunter, et al            0000296897

at the father's home. Amarrie stated that the father told her he was going on vacation and that she was unable to go and would need to find someone to stay with for the summer. Amarrie stated "he already arranged for me to stay with my aunt Kayla and she told me that I needed to be gone for the summer. Amarrie stated she did not know the father wanted her to be gone from his home for the summer until her aunt Kayla told her. Amarrie denied any concerns for the other siblings who reside in and visit the father's home. Amarrie denied any domestic violence in the home. When asked about substance use, Amarrie stated "he (father) gets really drunk on the weekends and has a breathalyzer in his car".

On June 21, 2023, the father sent a text message to the undersigned advising that he learned Ms. Smith is not the child's grandmother and did not want to move forward without confirmation of their relationship. On June 26, 2023, the undersigned called the father via telephone to further inquire about his text message. The father answered and stated that he was driving "a really big truck" and would need to call the undersigned back later. The undersigned asked the father to call back as soon as he was able on this day. No return call was received.

On June 30, 2023, the undersigned attended forensic interviews for the children, Miracle and Paris. The interview for the child, Aaron was not requested to be rescheduled by law enforcement. The undersigned observed the interview for the child, Miracle. Miracle stated she was at school and was being bad, and the school told her to be good. She then stated "the aunty whooped me". Miracle asked the interviewer not to tell her aunty what she said. She clarified that she "poo poo" on herself. She reported that aunty is "Latesha Howard". When asked what she was whooped with, Miracle stated "with a belt" and pointed to her bottom and stated she was hit on her "private part" and it made her private part feel "good". When asked who else aunty whoops, Miracle stated "Aaron, Paris, Amarrie". When asked who Aaron is, Miracle stated "Aaron run away" and clarified that he

Amarrie Le'shai Hunter, et al                                              0000296897

runs away all day and keeps running away again and again. When asked what happens when he runs away, Miracle stated "he has to lay down". She reported that Aaron runs away "because aunty keeps hitting him". When asked what she hit Aaron with Miracle stated "with the belt" and clarified that aunty hits with the belt and stated "aunty hits us with the belt". When asked what the belt looks like Miracle made unintelligible statements and was not able to describe the belt. Miracle confirmed that her aunty hit Paris with the belt.

When asked why the aunty hits her, Miracle stated "I don't know". She reported that when she poops on herself aunty says "no don't poop on yourself" and "her whoops me all day". Miracle stated she was whooped for two (2) weeks and threw up when she was eating chicken. When asked how her private part feels when she is hit, Miracle stated she was tired and asked the interviewer to call Paris. When asked for clarification about aunty hitting Amarrie, Miracle stated "no I didn't say that I said aunty hit Aaron". Miracle was asked about aunty hitting Paris and stated "No I didn't say that". When reminded of her initial statements, Miracle stated "aunty hit Aaron then aunty hit Amarrie, then aunty hit Paris". Miracle stated "aunty hit Amarrie with the belt on her private part". When asked where Amarrie's private part is, Miracle pointed to her vagina. When asked how she knew aunty hit Amarrie on her private parts, Miracle stated "I don't know". She stated "Amarrie went to her dad's house, then aunty start to hit Aaron". When asked what has happened to her private parts, Miracle began to make unintelligible statements. Miracle stated that Paris wanted to run away too and was unable to clarify why Paris wanted to run away. The interview was then ended.

The undersigned observed the interview for the child Paris. Paris asked if the interviewer was going to tell her "aunty", Latesha Howard what she said. When asked what she thought would happen if the interviewer told the aunty what Paris said she stated she would get in trouble. Paris stated her brother is Aaron and that he was taken away. She

Amarrie Le'shai Hunter, et al                                              0000296897

clarified "because aunty said don't tell nobody I was hitting him, but him still tell and Aaron told his teacher not to tell anybody". She stated "then aunty said him wasn't telling the truth, but him was telling the truth". Paris stated her aunt "hit Aaron in the head, and me". She stated "it was hurting and Aaron was crying but I wasn't". She stated "when aunty hit him in the head, him had a bump on his head". Paris reported that aunty hit Aaron in the head "with the roller painter thing". She demonstrated that the "roller" is what you use to put paint on the wall. When asked where he was hit, Paris stated "right on him head". She pointed to the back of her head when asked where he was hit. She stated "her hit me on the head right here but I don't have a bump". Paris stated her head was bleeding and Aaron "saw the bleed drop on the ground then him was crying". She stated both of their heads were bleeding. When asked who saw aunty hit Paris and Aaron in the head, Paris stated "my dad Reggie" and stated there is "big Reggie" and "little Reggie" his son. Paris was asked what big Reggie said when he saw aunty hit them in the head, Paris stated "nothing". She stated that she was hit at aunty's house in Oak Hills California. When asked why aunty hit her and Aaron in the head with the paint roller, Paris stated "so Aaron said" and did not finish her sentence.

        Paris stated she was hit in the head "because we keep doing stuff that we're not supposed to". She reported another time she was hit was when "me and Aaron got out the room" and stated "aunty hit us when we got out the corner and made us stand in the corner all day but Aaron keep running away, then aunty hit him". She stated "when aunty hits him, him run away". Paris then stated when Aaron runs away, aunty hits him with the belt. Paris stated she was hit on her hand with the belt and her hand was red after she was hit. Paris reported that aunty hit Aaron with the belt on his hand, and his hand was black after he was hit. When asked who else aunty hits, Paris stated "Miracle and Amarrie". She reported that aunty hits Miracle with a belt and Amarrie with her hand. Paris stated she saw

Amarrie Le'shai Hunter, et al                                                    0000296897

aunty hit Miracle when she was not in the corner. When asked where on her body Miracle was hit, Paris stated "on her hand". When asked about standing in the corner all day, Paris demonstrated standing facing the wall. She reported that when she is hungry from standing in the corner, "her feeds me at night time". Paris reported she is not allowed to go to the bathroom when she is standing in the corner. When asked where on Amarrie's body she is hit, Paris stated "on her hand" and that she does not know what Amarrie is hit for. The interview was ended. The CAC Reports have not been received.

On July 12, 2023, the undersigned met with the child, Aaron alone in the CFS office to discuss the allegations. The child stated he was comfortable speaking with the social worker alone. The child demonstrated a good understanding of the truth vs. a lie and promised to only tell the truth. The child denied that anyone told him what to say to a social worker. The child appeared drowsy and his speech was slurred. The child recently had a haircut and the undersigned observed a large bump in the back of the child's head. When asked about the slur in his words, the child stated it was due to his medication and declined to continue the interview later. When asked about the reason for removal, the child stated "I don't know I think the social worker Gerald tricked me". When asked what "tricked" means, Aaron stated "when they make you think one (1) thing is going to happen but then it doesn't".

Aaron stated he was told he would go live with his biological grandmother if he did not want to stay with the adoptive mother, and he knew to "say she (adoptive mother) hit me even though she didn't". Aaron clarified that he ran away from the adoptive mother's home because he did not want to do the yard work. Aaron stated that he was cleaning the yard and did not want to because it was "hot and heavy so I ran away in the street". He stated "uncle Reggie" tried to chase me. Aaron stated "Before I ran away I lied to this man (SSP Stone) and said aunty hit me because I didn't want to go back and clean". When

First Addendum to                                                    14
Jurisdictional/Dispositional
Report
07/17/2023

Amarrie Le'shai Hunter, et al                                                    0000296897

asked about concerns reported about the back of his head, Aaron stated "I slipped and
bumped my head on the door. It was a lie and my sister wasn't even there". Aaron stated
the adoptive mother saw him bump his head. He stated he did not know if there was any
injury to his head from hitting the door. Aaron was asked about his previous statements
regarding a paint stick. Aaron clarified that he and his siblings, Paris and Miracle were hit by
their biological grandparents with a "paint stick not a paint roller". Aaron does not recall
when he was hit. He stated "It was a stick and my grandpa hit me because I was crying
when I couldn't have a microwave dinner".

When asked about discipline in the home, Aaron stated "the corner for a little
while". When asked what happens when he does not stay in the corner, Aaron stated "she
hits me". He clarified that the adoptive mother "hit me with her hand if I don't listen". He
stated he does not remember where he was hit, as it was "multiple times on different days".
Aaron denied any hitting to the child, Amarrie. He stated "Miracle and Paris it's the same as
me". Aaron did not know if any bruises or marks were caused by being hit with the adoptive
mother's hand. Aaron denied being hit with a belt or any other object in the adoptive
mother's home. When asked if anyone in the home was hit with a belt, Aaron stated "it's a
lie". Aaron was asked about reunification and stated "if my sisters can go with me, I want to
go back home with my aunty, or my real mom and dad".

The undersigned met with the child, Amarrie in the CFS office. Amarrie stated
the father has attempted to retaliate against her because of her disclosures of his alcohol
use and mistreatment. Amarrie stated the father called her on Instagram and threatened to
come to the grandmother's home where she is currently residing. Amarrie stated her half-
sibling called her and informed that the family was packing up their belongings to move to
Texas and the father stated they would be throwing away the child's belongings. Amarrie
was asked about the statements reported about physical discipline to Amarrie by the

First Addendum to                                                    15
Jurisdictional/Dispositional
Report
07/17/2023

Amarrie Le'shai Hunter, et al                                                           0000296897

mother. She stated it was a lie and denied being hit by anyone in the home. Amarrie stated that if the siblings were hit by the adoptive mother, she was not aware. She stated "I was in my room when they get sent to the corner. I didn't hear any crying and I never saw her (the mother) hit them". Amarrie reiterated that she wants to return home and does not understand how "lies" are keeping her out of her mother's custody. The undersigned explained the concern that the siblings are disclosing physical discipline and abuse in the home.

          In consultation with supervision, it was determined that due to the father's failure to work with the Department to mitigate the dispute with the child, and the child's refusal to return to the father's home, the child, Amarrie has been left without a legal caregiver and is at risk of abuse and neglect. On June 12, 2023, a detention warrant was requested and approved by the honorable judge Jeffrey R Erickson. The mother and child, Amarrie were informed in person at the Victorville CFS office of the signed warrant and detention hearing. A request for placement of the child with the NREFM/grandmother, Antonette Smith was submitted. Ms. Smith is RFA approved in Los Angeles County and was approved for placement of the child, Aaron on June 26, 2023. On July 13, 2023, SSSP Williams arrived at the father's residence, for the father to be served with the detention warrant for the child, Amarrie. When there was no answer at the door, SSSP Williams called the father. The father answered and was verbally advised of the signed detention warrant and amended petition being filed regarding his refusal to provide care and support for the child, Amarrie. The father indicated that he did not need a copy of the warrant as he was willing to sign over custody of the child. The father reported he did not agree with the allegations as he did arrange and approve for the child to remain in the care of maternal relatives. The father was informed of the detention hearing date and location.

Amarrie Le'shai Hunter, et al                                                    0000296897

The mother provided the attached medical records showing her left shoulder injury, right wrist condition, past treatment and recommended follow up surgery of the shoulder. The medical records consisting of twelve (12) pages are attached and incorporated herein. The mother provided the attached photograph of the child Aaron's side profile that appears to show a large bump in the back of his head in early childhood. The mother, relative collaterals, and child, Amarrie have maintained that the lump observed in the back of the child, Aaron's head has been present since birth. The mother was referred to pre-dispositional services on May 22, 2023, that were scheduled to begin on June 08, 2023. Due to conflicts with the service provider, the mother has not begun therapy.

**ASSESSMENT/EVALUATION**

At this time, there remains a detriment to the children, Aaron, Paris and Miracle if they were returned to the care and custody of the mother, Latesha Howard. The children have made multiple statements regarding physical discipline and abuse in the adoptive mother's home. The child, Aaron and the child, Amarrie deny any physical abuse in the home. Due to the child, Amarrie's age and development, it appears she is able and willing to report any safety concerns to an appropriate adult. The CAC reports have not been received and the child, Aaron has not completed a CAC interview. The mother had not addressed the children's statements and Department's concerns in a therapeutic setting.

**JURISDICTIONAL RECOMMENDATIONS**

It is respectfully requested that the Court grant a 30-day continuance to allow time for the child, Aaron Zyair Howard to complete a forensic interview with the Children's Assessment Center (CAC) and for the Department to receive requested law enforcement reports and medical records.

**DISPOSITIONAL RECOMMENDATIONS**

Amarrie Le'shai Hunter, et al                                                      0000296897

It is respectfully requested that the Court grant a 30-day continuance to allow time for the child, Aaron Zyair Howard to complete a forensic interview with the Children's Assessment Center (CAC) and for the Department to receive requested law enforcement reports and medical records.

Amarrie Le'shai Hunter, et al                                                    0000296897

**Respectfully Submitted,**

Jeany Zepeda, Director of
Children and Family Services/
Human Services

**By**

_Tiyana Benitez_                                    07/14/2023
**Tiyana Benitez, SSP-JD, V8804**              Date
**(760) 243-6678**

_Wesley Williams_                                  07/14/2023
**Wesley Williams, SSSP-JD**                   Date
**(760) 243-6663**